**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MONICA DEL BOSQUE, JENNA RODRIGUEZ, FABIOLA SOLIS-GARAY, NICOLE WARE, and PHILIP WATTERSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COCA-COLA SOUTHWEST BEVERAGES LLC, <br><br> Defendant. | **CIVIL ACTION NO.**: 3:25-cv-01270-X |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   FACTS ......................................................................................................3

      A.    The Plaintiffs ................................................................................3

      B.    Defendant's Imprudent Processes Surrounding the JPMorgan TDFs....................4

      C.    Defendants' Improper Use of Forfeitures ....................................7

III.  ARGUMENT ............................................................................................9

      A.    Standard of Review.......................................................................9

      B.    Defendants' Imprudence Surrounding the JPMorgan TDFs.................................10

            1.    Defendant's imprudent investment monitoring process ...........................13

            2.    Meaningful benchmarks ................................................................15

            3.    The JPMorgan TDFs' excessive fees ................................................23

      C.    The AC is Timely........................................................................25

      D.    Forfeitures Were Improperly Used ............................................28

            1.    The governing law and Plaintiffs' particularized allegations ...................28

            2.    Defendant's strawman arguments....................................................30

      E.    Plaintiffs' Oppose Partial One-Sided Discovery....................34

IV.   CONCLUSION........................................................................................34

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Aguilar v. Nat'l Prod. Workers Union Severance Tr. Plan*,
No. 18-CV-03057, 2019 WL 9514732 (C.D. Cal. Nov. 1, 2019) ................................................ 28

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ........................................................................................... 19, 25

*Anderson v. Coca-Cola Bottlers' Ass'n*,
No. 21-2054, 2022 WL 951218 (D. Kan. Mar. 30, 2022) ...................................................*Passim*

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................................................... 17

*Becerra v. Bank of America Corp.*,
24-cv-921 (W.D.N.C. Aug. 12, 2025) ................................................................................... 29

*Beldock v. Microsoft Corp.*,
No. 22-CV-1082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ..................................... 21, 23

*Bell Atlantic Corp., v. Twombly*
550 U.S. 544 (2007) ............................................................................................................... 17

*Blackmon v. Zachary Holdings, Inc.*,
No. 20-cv-988, 2021 WL 2190907 (W.D. Tex. Apr. 22, 2021) ............................................... 9, 17

*Bouvy v. Analog Devices, Inc.*,
No. 19-cv-881, 2020 WL 3448385 (S.D. Cal. June 24, 2020) ............................................... 22, 26

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .................................................................................................... 9

*Brookins v. Ne. Univ.*,
731 F. Supp. 3d 112 (D. Mass. 2024) ...................................................................................... 17

*Brown-Davis v. Walgreen Co.*,
No. 19-cv-05392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) ........................................... 22, 24

*Buescher v. N. Am. Lighting, Inc.*,
No. 24-cv-2076, 2025 WL 1927503 (C.D. Ill. June 30, 2025) ...........................................*Passim*

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ..............................................................................................*Passim*

*Cain v.*, *Siemens Corp.*,
No. 24-CV-8730, 2025 WL 2172684 (D.N.J. July 31, 2025) ...................................................... 31

*Caputo v. Pfizer, Inc.,*
*267 F.3d 181 (2d Cir. 2001)* ............................................................................................................. 27

*Cure v. Factory Mut. Ins. Co.,*
No. 23-cv-12399, 2025 WL 360622 (D. Mass. Jan. 31, 2025).................................................... 16

*Daggett v. Waters Corp.,*
731 F. Supp. 3d 121 (D. Mass. 2024) ...............................................................................11, 12, 13

*Davis v. Stadion Money Mgmt., LLC,*
No. 19-cv-556, 2020 WL 1248580 (D. Neb. Mar. 16, 2020).................................................. 15, 25

*Davis v. Washington Univ. in St. Louis,*
960 F.3d 478 (8th Cir. 2020) .......................................................................................................... 20, 21

*Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.,*
No. 17-cv-07243, 2018 WL 11361335 (N.D. Cal. Nov. 19, 2018).............................................. 16

*Colonna v. LoanDepot.com LLC,*
No. 24-cv-0376, 2024 WL 5047875 (Dec. 9, 2024) ....................................................................... 34

*Dimou v. Thermo Fisher Sci. Inc.,*
No. 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024).................................................. 31

*Doll v. Evergy Inc.,*
No. 4:25-cv-00043 7 (W.D. Mo. Sep. 10, 2025)........................................................................... 10

*Dueling v. Devon Energy Corp.,*
623 F. App'x 127 (5th Cir. 2015) ................................................................................................... 35

*Falberg v. Goldman Sachs Grp., Inc.,*
No. 19-cv-9910, 2020 WL 3893285 (S.D.N.Y. July 9, 2020) ................................................ 22, 25

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014)....................................................................................................................... 2, 28, 32

*Fink v. National Sav. & Trust Co.,*
772 F.2d 951 (D.C.Cir. 1985)......................................................................................................... 27

*Fleming v. Rollins, Inc.,*
655 F. Supp. 3d 1243 (N.D. Ga. 2023) ..................................................................................... 12, 23

*Fumich v. Novo Nordisk Inc.*,
No. 24-cv-9158, 2025 WL 2399134 (D.N.J. Aug. 19, 2025)................................................. 31, 33

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. 2023) ................................................................... 20, 22

*Garcia v. Alticor, Inc.*,
No. 20-cv-1078, 2021 WL 5537520 (W.D. Mich. Aug. 9, 2021) ................................................ 14

*Gluck v. Unisys Corp.*,
960 F.2d 1168 (3d Cir. 1992) ........................................................................... 27

*Hamer v. JP Morgan Chase Bank, N.A. Long Term Disability Benefit Plan*,
No. 23-cv-00832, 2024 WL 5457448 (D. Conn. Mar. 28, 2024).......................................... 15, 26

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) (*Hughes I*).......................................................................*Passim*

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) (*Hughes II*) ................................................................ 9

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) (*Hutchins I*)........................................... 30, 31, 33

*Hutchins v. HP, Inc.*,
No. 23-cv-05875, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025) (*Hutchins II*) .................. 30, 31, 31

*Intel Corp. Inv. Pol'y Comm. v. , 24*,
589 U.S. 178 (2020) (*Sulyma*) ........................................................................*Passim*

*Johnson v. Parker-Hannifin Corp.*,
122 F.4th 205 (6th Cir. 2024)..........................................................................*Passim*

*Karg v. Transamerica Corp.*,
No. 18-cv-134, 2019 WL 39384717 (N.D. Iowa Aug. 20, 2019) ................................................ 22

*Kistler v. Stanley Black & Decker, Inc.*,
No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) ...............................................*Passim*

*Kohari v. MetLife Grp., Inc.*,
No. 21-cv-6146, 2022 WL 3029328 (S.D.N.Y. Aug. 1, 2022) .................................................. 26

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) .............................................. 13

*Locascio v. Fluor Corp.*,
No. 3:22-cv-0154, 2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ..........................................*Passim*

*Laliberte v. Quanta Services Inc.*,
22-cv-032904 (S.D. Tex Sep. 29, 2023) ..................................................................... 17

*In re LinkedIn ERISA Litig.*,
No. 20-cv-05704, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021).................................. 18

*Macias v. Sisters of Charity of Leavenworth Health Sys.*,
No. 23-cv-01496, (D. Colo. July 24, 2025) ...........................................................*Passim*

*Main v. Am. Airlines Inc.*,
248 F. Supp. 3d 786 (N.D. Tex. 2017) ........................................................................ 29

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ...................................................................... 16, 21, 24

*Mator v. Wesco Distribution, Inc.*,
102 F.4th 172 (3d Cir. 2024) ...................................................................................... 16

*Mattson v. Milliman, Inc.*,
No. 22-cv-37, 2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) ................................ 17

*Matousek v. MidAmerican Energy Co.*,
*51 F.4th 274 (8th Cir. 2022)*...................................................................................... 20

*McManus v. Clorox Co.*,
No. 23-cv-05325, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) (*McManus I*)...................... 30, 33

*McManus v. Clorox Co.*,
No. 23-cv-05325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ("*McManus II*")........ 29, 30, 31, 32

*McWashington v. Nordstrom, Inc.*,
No. 24-cv-1230, 2025 WL 1736765 (W.D. Wash. June 23, 2025) ............................. 33

*In re MedStar ERISA Litig.*,
No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) ......................................... 12

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018)..................................................................................... 20

*Middleton, v. Amentum Parent Holdings, LLC*,
2025 WL 2229959 (D. Kan. Aug. 5, 2025).......................................................... 31, 33

*In re Omnicom ERISA Litig.*,
No. 20-cv-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) ......................................... 17, 18, 21

*Parker v. Tenneco Inc.*,
No. 23-CV-10816, 2025 WL 1173011 (E.D. Mich. Apr. 22, 2025) ........................... 27, 30, 31, 32

*Parmer v. Land O'Lakes, Inc.*,
518 F. Supp. 3d 1293 (D. Minn. 2021) ......................................................................................... 18

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ...................................................................................................................... 29

*Perez Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024) ....................................... 29, 31, 31

*Perkins v. United Surgical Partners Int'l, Inc.*,
No. 23-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) ..................................................... 10, 24

*In re: Prime Healthcare ERISA Litig.*,
No. 20-cv-01529, 2021 WL 3076649 (C.D. Cal. July 16, 2021) ................................................. 18

*In re Quest Diagnostics Inc. ERISA Litig.*,
No. 20-cv-07936, 2021 WL 1783274 (D.N.J. May 4, 2021) ....................................................... 16

*Quigley on behalf of ConocoPhillips Sav. Plan v. ConocoPhillips Co.*,
756 F. Supp. 3d 479 (S.D. Tex. 2024) ......................................................................................... 28

*Rodriguez v., v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) ......................................................................................... 29

*Schaf v. O-I Glass, Inc.*,
680 F. Supp. 3d 854 (N.D. Ohio 2023) ....................................................................................... 17

*Seibert v. Nokia of Am. Corp.*,
No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024) ..................................................... 24

*Seidner v. Kimberly-Clark Corp.*,
No. 21-cv-867, 2023 WL 2728714 (N.D. Tex. Mar. 30, 2023) ............................................ 17 ,20

*Sellers v. Trustees of Coll.*,
647 F. Supp. 3d 14 (D. Mass. 2022) ...................................................................................... 14, 22

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ............................................................................................... 12, 17

*Snyder v. UnitedHealth Grp., Inc.,*
No. 21-cv-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021)................................. 22, 24

*Spence v. Am. Airlines, Inc.,*
718 F. Supp. 3d 612 (N.D. Tex. 2024) ............................................................. 9, 16, 20

*Stewart v. Nextera Energy, Inc.,*
No. 23-cv-81314 (S.D. Fla. Aug., 14, 2025)................................................... 29, 30, 31

*Su v. Allen,*
No. 17-cv-784, 2023 WL 6323310 (W.D. Ky. Sept. 28, 2023).................................. 29

*Su v. Johnson,*
68 F.4th 345 (7th Cir.)........................................................................................ 25

*Sweda v. Univ. of Pa.,*
923 F.3d 320 (3d Cir. 2019) ............................................................................. 9, 28

*Terraza v. Safeway Inc.,*
241 F. Supp. 3d 1057 (N.D. Cal. 2017) ............................................................. 12, 23

*Thomson v. Caesars Holdings Inc.,*
661 F. Supp. 3d 1043 (D. Nev. 2023) ...................................................................... 21

*Tibble v. Edison Int'l,*
575 U.S. 523 (2015) (*Tibble I*)...................................................................... 1, 14, 27

*Trauernicht v. Genworth Fin. Inc.,*
No. 22-cv-532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023)................................. 17, 23

*Tullgren v. Booz Allen Hamilton,*
No. 22-cv-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023)....................................11

*Vellali v. Yale Univ.,*
308 F. Supp. 3d 673 (D. Conn. 2018) ...................................................................... 26

*White v. Chevron,*
2017 WL 2352137 (N.D. Ca. May 31, 2017),
*aff'd.,* 752 Fed. Appx. 453 (9th Cir. 2018) ............................................................. 19

*Wright v. Oregon Metallurgical Corp.,*
360 F.3d 1090 (9th Cir. 2004)................................................................................. 32

*Zimmerman v. Cedars-Sinai Med. Ctr.,*
No. 23-cv-01124, 2024 WL 1135773 (C.D. Cal. Feb. 18, 2024).................... 12, 17, 23

**Statutes**

29 U.S.C. § 1104(a)(1)(A) .................................................................................... 1

29 U.S.C. § 1104(a)(1)(B) .................................................................................... 1

**Other Sources**

The Employee Retirement Income Security Act of 1974 ....................................*Passim*

Monica Del Bosque, Jenna Rodriguez, Fabiola Solis-Garay, Nicole Ware, and Philip Watterson ("Plaintiffs"), on behalf of the Coca-Cola Southwest Beverages 401(k) Plan (the "Plan"), submit this Opposition to Defendant's Motion to Dismiss, ECF No. 25 ("MTD"). "Defendant" or the "Company" refers to Coca-Cola Southwest Beverages LLC.

## I.    INTRODUCTION

To safeguard plan participants, the Employee Retirement Income Security Act of 1974 ("ERISA"), imposes strict fiduciary duties upon fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). These twin duties of loyalty and prudence are "the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). Defendant breached these duties in numerous ways. *See* Amended Complaint, ECF No. 21 ("AC").

First, an ERISA fiduciary's "continuing duty to monitor trust investments and remove imprudent ones […] exists separate and apart from [its] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (*Tibble I*). Defendant failed to monitor the Plan's JPMorgan SmartRetirement target date funds ("JPMorgan TDFs"), that were excessively priced and chronically underperforming since before being selected for the Plan and continuously thereafter. Similar allegations regarding the same JPMorgan TDFs were recently upheld at the motion to dismiss stage. *See Macias v. Sisters of Charity of Leavenworth Health Sys.*, No. 23-cv-01496, Slip Op., at 4 (D. Colo. July 24, 2025) (Ex. A).[1]

Plaintiffs cite data that should have been known to Defendant throughout its stewardship to plausibly allege that "an appropriate investigation would have revealed this information and that

---

[1] Plaintiffs are attaching *Macias* and several recent, unpublished decisions.

such information, when weighed against the information that should have been gathered on other providers, would cause [Defendant] to eliminate" the JPMorgan TDFs. *Bussian*, 223 F.3d at 307. The AC alleges robust details supporting the aptness of Plaintiffs' comparators. Defendant's arguments for dismissal ignore many supporting details in the AC and therein fails to liken the AC to dismissed complaints that either lacked the same meaningful comparators and/or interrelated underperformance ***and*** excessive fee allegations. The AC's allegations create a well-rounded inference of imprudence. Defendant errs in attempting to attack these allegations separately despite the Supreme Court's mandate to "[]evaluate the allegations as a whole[,]" using a "context specific" approach. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (*Hughes I*).

Second, ***based on the specific circumstances facing Defendant and the AC's particularized allegations,*** Defendant had a conflict of interest regarding how to use forfeitures, but failed to take prudent steps to ensure its decision adhered to ERISA's "'exclusive purpose'" of "'providing benefits to participants and their beneficiaries' while 'defraying reasonable expenses of administering the plan.'" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420 (2014) (quoting §§ 1104(a)(1)(A)(i), (ii)). The Supreme Court and Fifth Circuit instruct that taking actions merely "consistent with the provisions of the Plan and with ERISA […] does not mean that a fiduciary's acts […] may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants.'" *Bussian*, 223 F.3d at 295 (quoting § 1104(a)(1)); *see also id*., at 299 ("The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised."); *Fifth Third Bancorp,* 573 U.S. at 420 (ERISA "makes clear that the duty of prudence trumps the instructions of a plan document."). Many recent decisions have applied these bedrock principles to similar forfeiture allegations. Defendant not only ignores or misconstrues

binding precedent, but also ignores or misconstrues Plaintiffs' particularized allegations. Courts see through these ploys in analogous forfeiture cases.

Third, Defendant's "actual knowledge" arguments ignore Supreme Court precedent and thus fail because "a given plaintiff will not necessarily be aware of all facts disclosed to him; even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure[,]" and participant disclosures do not inform participants of Defendant's underlying processes. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 187 (2020) (*Sulyma*).

For these reasons, Plaintiffs request that Defendant's Motion to Dismiss be denied entirely.

## II.    FACTS

### A.    The Plaintiffs

All Plaintiffs participated in the Plan and suffered injury because Defendant failed to use forfeited Plan funds to pay the Plan's services, which would have reduced or eliminated the amounts charged to their individual accounts to pay these costs. *See* AC, ¶¶ 21-26. Plaintiffs Watterson, Rodriguez, Solis-Garay and Del Bosque invested in the JPMorgan TDFs. *Id.* "Plaintiffs did not have and do not have actual knowledge of the specifics of Defendant's decision-making process […] because this information is solely within the possession of Defendant prior to discovery." *Id.*, ¶ 61. On September 27, 2022, "in an attempt to discover the details of the Plan's mismanagement, Plaintiffs wrote to the Plan administrator to request, among other things, 'all written instruments' governing or pertaining to the Plan, including 'investment policy statements and investment management contracts, or other instruments under which the Plan was established or operated, and all amendments, exhibits, or appendices thereto,' as well as any committee's meeting minutes." *Id.*, ¶ 62. Defendant responded to Plaintiffs' request, but did not provide an

investment policy statement or meeting minutes. *Id.*, ¶ 63. Meeting minutes are "the bare minimum needed to peek into a fiduciary's monitoring process." *Id.*, ¶ 64.

### B.    Defendant's Imprudent Processes Surrounding the JPMorgan TDFs

Defendant selected and retained the materially underperforming and excessively costly JPMorgan TDFs. AC, ¶ 78. From 2018 through 2020 the Plan's holdings in the JPMorgan TDFs grew from $204 million to over $234 million. *Id.* With such a large amount invested in the JPMorgan TDFs, Defendant would have been able to choose any available Target Date Fund (TDF) series. *Id.*, ¶ 105. The JPMorgan TDFs were belatedly replaced in November of 2021. *Id.*, ¶ 106.

Diligent investment professionals, and hence fiduciaries, regularly evaluate the performance and fees of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents using data driven methods. *Id.* ¶¶ 69-70. Such data is provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on TDFs and other types of investments. *Id.* ¶ 72. "A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings" and "based on their portfolio statistics and compositions." *Id.*, ¶ 94.  (citation to Morningstar omitted).

TDFs are designed to provide a single diversified investment vehicle for plan participants. TDFs are offered as a suite of funds, with each fund based on the participant's anticipated retirement date. AC, ¶ 79. The measurement of TDFs against prudently managed alternatives is critical given that these alternatives represent other TDFs available to the Plan, which may be a more appropriate choice to meet participants' retirement needs. *Id.* ¶¶ 71, 96. The duty to ensure that a Plan's TDF is prudent is heightened when considering that participants often invest all their retirement assets in a TDF, and when, like here, the TDF is the default selection for participants

4

who do not actively select any investments. *Id.* ¶ 90. "[N]o two target date series are identical," but "[t]he subtle differences between series are what makes them more or less prudent than others, especially in terms of performance predictability." *Id.* ¶ 81 Assets in a TDF include equity (stock) and fixed income (bond) securities. *Id.* ¶ 83. TDFs rebalance their portfolios to become more conservative as the participant gets closer to retirement. *Id.* ¶ 84. This rebalancing is based on the fund's "glidepath." *Id.* There are two types of glidepaths: "To" and "Through." *Id.* ¶ 87. A "To" glidepath TDF is designed to allocate its underlying assets to the most conservative investments at the year of the expected retirement. *Id.* A "Through" glidepath TDF continues its progression to reach its most conservative asset allocation past the expected retirement date. *Id.* Another aspect of mutual funds in general is the type of management, either active or passive. *Id.* ¶ 89.[2] All TDFs, however, are truly actively managed because the glidepath of the funds must be managed by an investment manager. *Id.* ¶ 102.

Morningstar created the Morningstar Lifetime Moderate Index ("Morningstar Index") category as the index category for TDFs like the JPMorgan TDFs. AC, ¶ 93. The AC uses the Morningstar Index and specific TDF series, or "Comparator Funds", as meaningful benchmarks to compare the JPMorgan TDFs to for several reasons. *Id.*, ¶ 98. First, each Comparator Fund "pursue[s] the same investment objectives as the [JPMorgan TDFs], invest primarily in equity (stock) and fixed income (bond) securities as do the [JPMorgan TDFs], invest in both U.S. and foreign securities as do the [JPMorgan TDFs]." *Id.* Second, each Comparator Fund "utilize[s] a "through" glide path as do the [JPMorgan TDFs]." *Id.* Third, each Comparator Fund is managed by a well-known investment adviser. *Id.* The AC cites each Comparator Fund's prospectus for these

---

[2] With passive management, the manager attempts to mimic the performance of a relevant benchmark index, whereas with active management, the manager attempts to select stocks or bonds to generate investment returns that exceed the relevant benchmark index. *Id.*

facts. *See id.*, nn. 13-16. Fifth, Morningstar places the four Comparator Funds and the JPMorgan TDFs in the Morningstar Index because the underlying holdings of each fund match the risk return profile of this category. *Id.*, ¶ 100. Comparable risk strategy is also a part of the glide-path consideration. *Id.* ¶ 87. Lastly, the Comparator Funds and JPMorgan TDFs have primarily active management. *Id.* ¶ 101. The JPMorgan TDFs are a blend of passive and active management, *see id.*, but, again, all TDFs are truly actively managed because the glidepath's need to be managed by the investment manager. *Id.* ¶ 102.

The performance of the JPMorgan TDFs lagged behind the performance of the Comparator Funds since at least 2014, before they were selected for the Plan, clearly showing that they were an imprudent choice for the Plan. *See* AC, ¶¶ 106-09. By 2018, the start of the Class Period, the JPMorgan TDFs underperformed the Comparator Funds on average by 30.21% and 23.26% on a on a three- and five-year basis, respectively. *Id.*, ¶ 110. The JPMorgan TDFs underperformed every Comparator Fund for each vintage on a three-year and five-year basis. *Id.* By 2018, the JPMorgan TDFs underperformed the Morningstar Index on average by 31.40% and 7.12% on a three- and five-year basis, respectively. *Id.*, ¶ 111. Another chart in the AC demonstrates that this trend of underperformance continued into 2016. *Id.*, ¶ 113. By the end of 2020, the JPMorgan TDFs underperformed the Comparator Funds on average by 20.28% and 13.87% on a three- and five-year basis, respectively. *Id.*, ¶ 114. By the end of 2020, the JPMorgan TDFs underperformed the Morningstar benchmark on average by 5.62% and 8.79% on a three- and five-year basis, respectively. *Id.*, ¶ 115. Worse yet, the JPMorgan TDFs had some of the worst fund rankings in its Morningstar Category for 2018 and 2020. *Id.*, ¶ 117. This data was available to Defendant before and during the Class Period, *i.e.*, in real time, and does not constitute any hindsight analysis. *Id.*

Failing to remove the JPMorgan TDFs until the end of 2021 was unjustifiable, particularly because they should never have been selected for the Plan. *Id*., ¶¶ 119-20.

The expense ratio is the fee that the investment manager deducts from fund assets. *Id*. ¶ 89 n.11. The JPMorgan TDFs were unjustifiably overpriced while also underperforming. AC, ¶ 123. The AC offers two tables comparing fees to the same materially similar Comparator Funds as the performance section and the Morningstar median expense ratios. AC, ¶¶ 127-128. The expense ratios for JPMorgan TDFs in the Plan were up to 85% higher than the expense ratios for the Comparator Funds and 39% higher than the Morningstar median expense ratios. *Id*., ¶ 128. This information was easily knowable throughout the Class Period. *Id*., ¶ 129.

### C. Defendant's Improper Use of Forfeitures

Defendant enjoys both direct and indirect benefits by providing contributions to Plan participants, such as the opportunity for tax deductions and the ability to retain talented employees. *See* AC, ¶ 46-47. All contributions made by the Company were assets of the Plan. *Id*., ¶ 131. If a participant leaves the Plan before the contributions vest, the unvested contributions are forfeited, becoming "forfeitures." *Id*., ¶ 52. Since at least the beginning of the Class Period, Defendant improperly used forfeitures for the Company's benefit to reduce employer contributions instead of using the funds to benefit Plan participants. *Id*., ¶ 144. The Plan document permits forfeitures to be used to: (1) restore participant accounts; (2) offset Plan expenses; or (3) reduce employer contributions. *Id*., ¶¶ 53-55.

The Plan's grant of discretion regarding forfeitures imputed a conflict of interest in this case where Defendant was both a fiduciary and agent of the Company. Here, using the forfeitures to reduce the Company's contributions is always in the best interest of the Company because that option would decrease its own contribution costs. AC, ¶ 137. On the other hand, using forfeitures

to pay Plan expenses would always be in all the participants' best interest because that option would reduce or eliminate amounts participants would otherwise pay in administrative fees. *Id.*, ¶ 138. To be sure, other arrangements and circumstances exist for other plans, which may not impute the conflicts of interest and results that are present here. Defendant failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries. *Id.*, ¶ 140. Defendant did not, for example, investigate whether there was a risk that the Company would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, as a prudent fiduciary would have done. *Id.*, ¶ 141. Defendant failed to consult with an independent, non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures, as a prudent fiduciary would have done. *Id.*, ¶¶ 142-43. Defendant allocated ***more than 100X*** the amount in forfeitures toward Company contributions than to offset Plan expenses. *Id.*, ¶ 145 (providing a table of amounts allocated). For example, in 2020, "forfeitures of approximately $996,000 were used to reduce employer contributions and $631 was used to pay Plan expenses[,]" however the total forfeitures available "were approximately $1,600,000." 2020 Form 5500 Independent Auditor's Report, at 7; *see also* AC, ¶ 145 n.19. In 2020, Defendant allocated ***1,578X*** the amount of forfeitures to reduce employer contributions than to pay Plan expenses. Worse yet, <u>*Defendant left $603,369 in forfeitures unallocated while the Plan paid at least $800,090 in Plan expenses*</u>. *See id.*, Schedule C. Additionally, based on the fact that in 2019, 2021, and 2023 the amount of offset exceeded the balance of the forfeiture accounts, it is likely Defendant used forfeiture funds from prior years to offset Company contributions. *Id.*, ¶ 148. This is a violation of IRS and general ERISA requirement that forfeitures are to be exhausted during the year in which they are incurred. *Id.* Taking the prudent step to consult with an independent, non-conflicted decisionmaker would not have led to

these results. Defendant imprudently and disloyally placed its own interests above the interests of the Plan causing avoidable injury to Plan participants' accounts. *Id.*, ¶ 147.

## III.    ARGUMENT

### A.    Standard of Review

At this stage in ERISA cases, courts "accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Spence v. Am. Airlines, Inc.*, 718 F. Supp. 3d 612, 616 (N.D. Tex. 2024). ERISA complaints are also evaluated "as a whole" using a "context specific" approach. *Hughes I*, 595 U.S. at 177. "In determining compliance with ERISA's prudent man standard, […] the appropriate inquiry is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment." *Bussian*, 223 F.3d at 299. However, this examination occurs "after sufficient time for discovery." *Blackmon v. Zachary Holdings, Inc.*, No. 20-cv-988, 2021 WL 2190907, at *6 (W.D. Tex. Apr. 22, 2021) (quoting *Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019)). This is because "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). To require such facts would impermissibly create "a heightened standard of pleading at the beginning of the lawsuit [which] would cause 'the remedial scheme of the statute [to] fail, and the crucial rights secured by ERISA [to] suffer.'" *Spence*, 718 F. Supp. 3d at 621 (quoting *Braden*, 588 F.3d at 598).

For the forgoing reasons, appellate courts agree that "the Supreme Court's directive [in *Hughes I*] to recognize the 'difficult tradeoffs' that an ERISA fiduciary faces, and the 'range of reasonable judgments' that may be made" are "alternative explanations [that] need not be conclusively ruled out at the pleadings stage." *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir.

2023) (*Hughes II*)[3]; *see also Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342, at *3 (5th Cir. Apr. 11, 2024) (if a defendant's explanation "is not the *only* plausible explanation" it cannot be used to defeat a plaintiff's allegations that include "another plausible explanation."); *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 222 (6th Cir. 2024) (same). Just this month, a district court opinion from the Eighth Circuit explained that "[w]hile Defendants argue that Plaintiffs' allegations of wrongdoing 'do not suggest that the Committee's conduct was outside the 'range of reasonable judgments' that fiduciaries make[,]' (Doc. #66, p. 29), such an argument concerns factual disputes not appropriate for a motion to dismiss.'" *Doll v. Evergy Inc.*, No. 4:25-cv-00043, Slip Op., at 7 (W.D. Mo. Sep. 10, 2025) (Ex. B). *Perkins*, *Hughes I*, and other cases echo the Supreme Court's holding in *Fifth Third Bancorp*, that there is no "defense-friendly standard" or "presumption of prudence" in ERISA cases. *Fifth Third Bancorp*, 573 U.S. at 412; *see also Anderson v. Coca-Cola Bottlers' Ass'n*, No. 21-2054, 2022 WL 951218, at *7 (D. Kan. Mar. 30, 2022) ("In its last three significant cases involving claims of imprudence under ERISA, a unanimous Supreme Court has rejected liability-limiting arguments at the pleading stage.").

## B.    Defendant's Imprudence Surrounding the JPMorgan TDFs

With dismal performance data available as early as 2014, the AC alleges that the JPMorgan TDFs were an imprudent selection for the Plan and were imprudently retained in the Plan for too long. Collectively, the data available to Defendant as early as 2014 and consistently after, includes: (1) consistent and material underperformance against the Morningstar Index, (2) consistent and material underperformance against the Comparator Funds, (3) dismissal fund rankings according to industry experts, (4) excessive fees compared to the Morningstar median, and (5) excessive fees

---

[3] Defendant misconstrues this *Hughes I* quote to insist on the presumption of prudence at the motion to dismiss stage, despite *Hughes I* holding to opposite. *See* MTD at 8.

compared to the Comparator Funds. *Id.*, ¶¶ 81-129.[4]  The chronic availability of this data "point[s] to [requisite] information 'at the time of the investment without the benefit of hindsight.'" *Locascio v. Fluor Corp.*, No. 3:22-cv-0154, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023); *see also Daggett v. Waters Corp.*, 731 F. Supp. 3d 121, 138 (D. Mass. 2024) ("the Amended Complaint has plausibly alleged that the Plan Committee retained imprudent investments for an unreasonable period of time and an 'adequate investigation would have revealed" the investment's "'improviden[ce].'"). The AC uses meaningful benchmarks and information knowable at each point when Defendant was obligated to continuously monitor the JPMorgan TDFs' fees and performance.

Defendant makes many errors in moving to dismiss the JPMorgant TDF claims. First, Defendant fails to read the AC "as a whole." *Hughes I*, 595 U.S. at 177. Defendant admits that "underperformance can certainly be a factor in assessing the prudence of an investment." MTD at 18. The JPMorgan TDFs certainly underperformed. Defendant does not deny there was underperformance. Instead, Defendant argues that "Plaintiffs ask the Court to infer that the process was flawed because the Comparator Funds allegedly performed better ***and*** had lower fees than the JPMorgan TDFs" but, despite admitting that the complaint alleges both underperformance and excessive fees, Defendant attempts to state that underperformance "in isolation is not sufficient." *Id.*, at 17-18. While Defendant cites many cases that *either* alleged underperformance *or* excessive fees, this case alleges *both*. The JPMorgan TDFs' excessive fees are not a separate issue from performance, but actually mean Plaintiffs do not allege "performance alone." MTD at 17. *See*

---

[4] Hence, the AC does not "allege[] underperformance during a [single] three-or five-year period, *without more*[,]" making Defendant's reliance on *Tullgreen* and other cases unhelpful. MTD at 18 (quoting *Tullgren v. Booz Allen Hamilton*, No. 22-cv-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023)); *but see Tullgreen*, 2023 WL 2307615, at *6 n.3 ("Nor will the Court address whether the time period reflected in those charts is legally sufficient.").

*Daggett*, 731 F. Supp. 3d at 137 (considering that fees were "unjustified" by underperformance holistically); *Fleming v. Rollins, Inc.*, 655 F. Supp. 3d 1243, 1267 (N.D. Ga. 2023) ("Plaintiffs [plausibly] identify better performing funds with lesser fees." "At this juncture, the Court declines the Alliant Defendants' invitation to weigh their competing explanations against Plaintiffs' well-pled allegations."); *Anderson*, 2022 WL 951218, at *8 (same); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (same); *Zimmerman v. Cedars-Sinai Med. Ctr.*, No. 23-cv-01124, 2024 WL 1135773, at *7 (C.D. Cal. Feb. 18, 2024) (although the defendants attacked each theory separately, "the Court will not silo its own analysis" but will "view all the allegations together[,]" where "the inference that there was a flawed process is reasonable based on the allegations that the processes in place allowed for excessive fees and the retention of underperforming funds.").[5]

The JPMorgan TDFs' imprudence is also bolstered by the alleged Morningstar rankings. *See* AC, ¶ 117. Publicly disseminated information by prominent investment analysts is frequently deemed a supporting *indicia* of imprudence when paired with other allegations. *See Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543, at *14 (D. Conn. July 3, 2024) ("[p]rudent fiduciaries would have at the very least taken note of the repeatedly poor rankings."); *Anderson*, 2022 WL 951218, at *8 ("Plaintiff has also supplemented those allegations with one analyst's conclusion" about the challenged funds); *In re MedStar ERISA Litig.*, No. 20-cv-1984,

---

[5] The only case Defendant cites that alleged both excessive fees and underperformance is materially distinguishable because it was a different theory of liability: "a participant alleged that fiduciaries acted imprudently by offering actively managed investment funds when index funds were available which had higher returns and lower fees[,]" as a category. MTD at 18 (discussing *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022)); *but see Johnson*, 122 F.4th at 215-16 (more recently, the Sixth Circuit upheld allegations challenging a specific TDF suite). Unlike *CommonSpirit*, Plaintiffs do not allege that TDFs *as a category* of investment is imprudent.

2021 WL 391701, at *2 (D. Md. Feb. 4, 2021) (similar); *Krueger v. Ameriprise Fin., Inc*., No. 11-cv-02781, 2012 WL 5873825, at *3 (D. Minn. Nov. 20, 2012) (finding allegations involving "Morningstar, an independent rating service" plausible). Defendant does not argue that Morningstar had no basis for finding the JPMorgan TDFs were so poor, nor that this information was unknowable in real time. Instead, Defendant attempts to make much of the fact that not every year is included, but this premature argument goes outside the four corners of the AC and does not affect plausibility of the AC as a whole.

The recent, published opinion in *Daggett* is instructive. First, the court recognized that the plaintiffs were not alleging that the defendants must "scour the market to find and offer the cheapest possible fund." *Daggett*, 731 F. Supp. 3d at 137; *see also* MTD at 18 (making the same strawman argument). Rather, "[a] claim of breach is sufficiently made out, however, when a plaintiff plausibly alleges that the higher fees were unjustified or otherwise improper." *Id*. In *Daggett*, like here, the complaint demonstrated underperformance against "multiple alternative TDFs in the same investment category" and "same asset category" with lower fees. *Id.*, at 141; *see also* AC, ¶¶ 81, 85-87, 95, 98(a)-(d), 100-03 (alleging the same). Further, "allegations of the public concerns about retaining these funds[,]" such as the Morningstar rankings here, offer more than just hindsight performance allegations. *Id.*; *see also* AC, ¶ 117. The court also joined a majority of other courts in holding that "[w]hether the alternatives proposed by Daggett withstand further analysis will have to be explored during discovery. Daggett's allegations are sufficient to create the sorts of comparisons called for at this juncture." *Id*. *Daggett* is directly on point.

### 1. Defendant's imprudent investment monitoring processes

Defendant "has a continuing duty to monitor trust investments and remove imprudent ones" which "exists separate and apart from [its] duty to exercise prudence in selecting investments

at the outset." *Tibble I*, 575 U.S. at 529. Defendant incorrectly states that "Plaintiffs allege no facts about the process Defendant used." MTD at 17. Not so. Contrary to Defendant's assertion, it is permissible that "Plaintiffs ask the Court to infer that the process was flawed[,]" *id.*, before discovery has commenced, based on chronic, public information, that the JPMorgan TDFs unperformed and were unjustifiably priced compared to the Comparator Funds and the Morningstar Index and Category. Courts routinely uphold "allegations that the Committee failed for years to perform sufficient reviews or investigations into the Plan's performance. [Because] it is plausible that Defendants had access to performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information." *Garcia v. Alticor, Inc.*, No. 20-cv-1078, 2021 WL 5537520, at *7 (W.D. Mich. Aug. 9, 2021) (emphasis in original); *see also Johnson*, 2024 WL 4834717 *5 ("the [challenged] Funds' alleged underperformance could impact Parker Hannifin's prudence in nonetheless choosing to retain the funds"); *Sellers v. Trustees of Coll.*, 647 F. Supp. 3d 14, 22 (D. Mass. 2022) (denying the defendants' motion to dismiss because, "Boston College ignored public red flags about certain investment offerings."); *Kistler*, 2024 WL 3292543, at *11-12 (same).

Defendant concedes that "generally plaintiffs may lack 'extensive information regarding the fiduciary's 'methods and actual knowledge' because those details 'tend to be in the sole possession of [that fiduciary]],'" but attempt to argue that ERISA's mandatory disclosures "can be used to show whether 'a prudent fiduciary in like circumstances would have acted differently.'" MTD at 19-20 (quoting *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025–26 (9th Cir. 2025)). The Supreme Court and numerous appellate courts have explicitly foreclosed this logic. *See Sulyma*, 589 U.S. at 187–89  (discussed further *infra*) ("a given plaintiff will not necessarily be aware of all facts disclosed to him" in order to have actual knowledge of a breach);

14

*Davis v. Stadion Money Mgmt., LLC*, No. 19-cv-556, 2020 WL 1248580, at **3, 4 (D. Neb. Mar. 16, 2020) ("if the fiduciary made an imprudent investment decision […] mere notification that [certain] funds were in the Plan menu falls short of providing 'actual knowledge.'"); *Hamer v. JP Morgan Chase Bank, N.A. Long Term Disability Benefit Plan*, No. 23-cv-00832, 2024 WL 5457448, at *7 (D. Conn. Mar. 28, 2024) ("fees and performance data that are 'clearly disclosed' by plan documents" does not provide direct knowledge of fiduciary processes). Defendant's attempt to find support in the *Anderson* decision fails, because *Anderson* did not hold that the ERISA's mandatory "summary plan description and an annual report" disclosures showing "how the fiduciary invested the plan's assets" equals information regarding the fiduciary's decision making *processes*. *Anderson*, 137 F.4th at 1025–26. *Anderson* actually held that "[a]n ERISA plaintiff can 'use the data about the selected funds and some circumstantial allegations about methods to show that 'a prudent fiduciary in like circumstances would have acted differently.'" *Id.* (citations omitted). That is the case here. Plaintiffs use data about the JPMorgan TDFs and circumstantial allegations to plausibly allege that "an appropriate investigation would have revealed this information and that such information, when weighed against the information that should have been gathered on other providers, would cause a fiduciary to eliminate" the JPMorgan TDFs. *Bussian*, 223 F.3d at 307.

### 2.    Meaningful benchmarks

As this Court aptly held, "meaningful benchmarks for comparison are important, and, in similar cases, some courts have required plaintiffs alleging breach of fiduciary duty to 'provide a sound basis for comparison.'" *Locascio*, 2023 WL 320000, at *6. The AC alleges in detail, citing fund prospectuses, the meaningfulness of the benchmarks. AC, ¶¶ 81, 85-87, 95, 98(a)-(d), 100-03. These are "all well-pleaded facts [accepted] as true" that are viewed "in the light most favorable

to the plaintiff." *Locascio*, 2023 WL 320000, at *2 (citation omitted). However, in *Locascio* the complaint failed to include "*any* plausible facts" so there was nothing to construe in the plaintiffs' favor. *Locascio*, 2023 WL 320000, at *5 (emphasis added); *see Locascio v. Fluor Corp*., No. 22-CV-0154 (N.D. Tex. Apr. 5, 2022), (ECF No. 18), ¶¶ 30-38 (lacking fund details, excessive fee allegations, and ranking allegations).

Some courts in the Fifth Circuit have held that "requiring a benchmark for measuring performance is not required at this stage given the inherent fact questions such a comparison involves. And, importantly, the Fifth Circuit has not imposed a performance-benchmark requirement." *Spence*, 718 F. Supp. 3d at 619 (listing cases). The First, Third, Sixth, and Ninth circuits also do not require a meaningful benchmark. *See Cure v. Factory Mut. Ins. Co*., No. 23-cv-12399, 2025 WL 360622, at *5 (D. Mass. Jan. 31, 2025) ("the First Circuit has not adopted this approach, and numerous sessions in this District have rejected it."); *In re Quest Diagnostics Inc. ERISA Litig*., No. 20-cv-07936, 2021 WL 1783274, at *4 (D.N.J. May 4, 2021) ("although Defendants dedicate a large amount of their briefing to whether the" comparators are apt, "at this stage, the Third Circuit requires a more 'holistic' assessment."); *Johnson*, 122 F.4th at 216 (that plaintiffs are permitted to use comparisons "does not mean that a plaintiff is required to point to a higher-performing fund to demonstrate imprudence."); *Anderson*, 137 F.4th at 1023 ("a plaintiff does not necessarily need to identify comparable funds or investments."). While the Eighth Circuit is uniquely stringent, "[t]he Fifth Circuit has yet to define" what constitutes a meaningful benchmark "exactly." *Locascio*, 2023 WL 320000, at *6. This makes sense, because "[d]rawing bright lines would run counter to the required contextual analysis" of ERISA. *Mator v. Wesco Distribution, Inc.,* 102 F.4th 172, 187 (3d Cir. 2024) (refusing to "adopt any rules" regarding comparisons); *see also Matney v. Barrick Gold of N. Am*., 80 F.4th 1136, 1148 (10th Cir. 2023)

(same). Essentially, if a plaintiff uses comparisons to infer imprudence, those comparisons must be plausibly meaningful beyond "simply labeling [a few individual] funds as 'comparable' or 'a peer'." *Locascio*, 2023 WL 320000, at *6 (citation omitted). The benchmarks here are meaningful.

Courts in this Circuit and across the country are in accord that a defendant's disagreement with the facts alleged to create comparisons are just that – factual, and therefor properly reserved for later stages under ERISA's pleading standard. *See Laliberte v. Quanta Services Inc*., 22-cv-03290, Slip Op., at 4 (S.D. Tex Sep. 29, 2023)  (citing *Blackmon*, 2021 WL 2190907, at *5 n.1) ("[t]he Fifth Circuit has not adopted the Sixth Circuit's holding in *Smith* nor the Eighth Circuit's holding in *Meiners* requiring a meaningful benchmark."); *Seidner v. Kimberly-Clark Corp*., No. 21-cv-867, 2023 WL 2728714, at *7 (N.D. Tex. Mar. 30, 2023) ("other courts considering similar issues have held that the determination of the appropriate benchmark for a fund is not properly resolved at the motion to dismiss stage.").[6]

The AC lists details found plausible in other cases involving TDFs. Recently, the court in *Macias* upheld the same exact allegations that each fund "'pursue[s] the same investment objectives as the [JPM TDFs], invest[s] primarily in equity (stock) and fixed income (bond)

---

[6] *See also Schaf v. O-I Glass, Inc*., 680 F. Supp. 3d 854, 860 (N.D. Ohio 2023) (arguments about comparisons "merely seeks to deny the allegations of the operative pleading."); *In re Omnicom ERISA Litig*., No. 20-cv-4141, 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021) ("allegations of similarity make it at least plausible that the two suites will be found to be comparable."); *Mattson v. Milliman, Inc*., No. 22-cv-37, 2022 WL 21596720, at *2 (W.D. Wash. Dec. 13, 2022) (refusing the defendants' arguments "that the funds and indices described in detail in the amended complaint have 'materially different' equity allocations and, therefore, do not share the same 'aims, risks, and potential rewards' as the WPS funds."); *Trauernicht v. Genworth Fin. Inc*., No. 22-cv-532, 2023 WL 5961651, at *13 (E.D. Va. Sept. 13, 2023) (any "greater level of detail is unnecessary at the motion to dismiss stage where *Iqbal* and *Twombly*" apply); *Zimmerman*, 2024 WL 1135773, at *8 (refusing to rule on the aptness of comparators "based on the say so of counsel."); *Brookins v. Ne. Univ.*, 731 F. Supp. 3d 112, 120 (D. Mass. 2024) ("The Court accepts as true plaintiff's contention that the three [] funds have 'similar underlying asset allocations'").

securities" including "U.S. and foreign securities as do the [JPM TDFs]" and  "utilize[s] a "through" glide path" and, "[is] managed by well-known investment advisers." *See Macias*, No. 23-cv-01496, Slip Op., at 4; *see also* AC ¶¶ 81, 85-87, 95, 98, 100-03 (alleging the same); *see also Omnicom*, 2021 WL 3292487, at *3 (upholding allegations where the "glide path suggests that" the comparators and challenged fund "follow essentially the same strategy."); *In re: Prime Healthcare ERISA Litig.*, No. 20-cv-01529, 2021 WL 3076649, at *6 (C.D. Cal. July 16, 2021) (although the degree of active management differed, the glidepaths were sufficiently similar which collectively made the benchmarks meaningful); *Johnson*, 122 F.4th at 210 (comparing a "through" glidepath TDF to a "through" glidepath index was meaningful); *but see Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021) (different "glide path strategies" made the comparators too different under the Eighth Circuit's stringent standard). While the scale of active to passive management is considered more in cases involving other types of mutual funds, in TDF cases, it is plausible that TDFs are "are inherently actively managed—the difference appears to be the degree to which they are actively managed." *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2021 WL 5331448, at *8 (N.D. Cal. Nov. 16, 2021); AC, ¶¶ 89, 101-02 (alleging the same); *see also*; *Kistler*, 2024 WL 3292543, at *1 (regardless of formality, "the managers of the TDF make 'active' decisions regarding asset allocation [...] [and] construction of a glide path involves substantial decision making."); *Macias*, No. 23-cv-01496, slip op., at 19 (the defendants' disagreement with this allegation was a factual dispute); *Prime*, 2021 WL 3076649, at *6 (same).

Defendant avers that "A fund's aims and goals, as well as its investment strategies, allocations of investments, and risks and potential rewards are all significant factors to consider." MTD at 12-13. The AC considers these factors and more. *See* AC, ¶¶ 87, 98, 100-02. Defendant concedes that the AC alleges that "the JPMorgan TDFs and the Comparator Funds each have a

'through' glide path, invest in both stocks and bonds, invest in both foreign and U.S. securities, and 'pursue the same investment strategies.'" MTD at 12 (citing AC ¶¶ 98(a)-(d)). Defendant omits that the AC *explains how* the strategies are comparable, and that "all five funds concentrate their holdings in the large blend risk/return category." AC, ¶¶ 81, 85-87, 95, 98, 100-03. Defendant cites no case law holding that these details "are insufficient" and baldly states that this case is like *Locascio*, **__which did not include any of these details__**. MTD at 12; *see supra*.

To be sure, Plaintiffs allege the similarities in risk profiles between the funds, *see* AC, ¶¶ 81, 100, and do not challenge the risk strategy of the JPMorgan TDFs. It cannot be read anywhere into the AC, and Defendant does not cite to any paragraph, that Plaintiffs allege Defendant should have "adopt[ed] a riskier investment strategy" or "select[ed] an investment alternative in view of its different risks and features." MTD at 15, 19. Defendant makes much of the Ninth Circuit's holding in *Anderson*, where the plaintiff brought challenges under the distinct theory of liability that, "in pursuing a purported risk-mitigation strategy, the Intel Funds gave up the long-term benefit of investing in equity." MTD at 16 (quoting *Anderson*, 137 F.4th at 1023-24). Defendant's block quote does the work of distinguishing *Anderson* for Plaintiffs, who make no such allegations. *Id*. Defendant's other out-of-circuit cases are equally unhelpful. The decision in *White* is unhelpful because the Ninth Circuit merely affirmed the dismissal of allegations that the defendant should have "select[ed] an investment alternative in view of its different risks and features[,]" which, again, is not challenged here. MTD at 19 (quoting *White v. Chevron*, 2017 WL 2352137, at *10 (N.D. Ca. May 31, 2017), *aff'd*., 752 Fed. Appx. 453 (9th Cir. 2018)). *Albert* did not involve underperformance and only generally challenged that "actively managed funds were too expensive" as a category of investments. *Albert v. Oshkosh Corp*., 47 F.4th 570, 581 (7th Cir. 2022).

Although, "[t]he Fifth Circuit has yet to adopt or express an opinion regarding application of the Eight Circuit's 'meaningful benchmark' standard[,]" the AC would suffice in any Circuit. *Spence*, 718 F. Supp. 3d at 619 (quoting *Seidner*, 2023 WL 2728714, at *7). For instance, "[t]he court [in *Matousek*] concluded that 'peer groups,' where 'the composition of the peer groups remains a mystery,' and two comparator funds were not meaningful benchmarks." *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023) (quoting *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281-82 (8th Cir. 2022)). Like the plaintiff in *Gaines*, Plaintiffs here "provide[] some explanation of the peer group's composition, alleging that they are chosen by Morningstar because the funds 'share core similarities.'" *Id.*, at 830. Further, Plaintiffs provide more than "two comparator funds as in *Matousek.*" *Id.*, and include facts about strategies, glidepaths, etc., from the funds' prospectus. *See* AC, ¶¶ 81, 85-87, 95, 98(a)-(d), 100-03. Similarly distinguishable is the complaint in *Meiners* where the <u>sole</u> comparator alleged had "a different investment strategy" and the opinion did not discuss glidepath and risk categories which are comparable here. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). "The totality of [Plaintiffs'] allegations regarding underperforming funds is thus more detailed than the allegations in *Matousek*" and *Meiners. Gaines*, 663 F. Supp. 3d at 830. Notably, the Eighth Circuit did hold that "*Meiners* may be correct that certain factual findings made by the district court regarding Vanguard were improper at this stage[,]" thereby reiterating that factual disputes about comparisons are premature. *Meiners*, 898 F.3d at 823 n.4. Defendant cites to the portion of *Davis* dealing with "a variable annuity" that was meant to offer a "broad exposure to both domestic *and* international equities[,]" making it significantly different from its comparators. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (emphasis in original). *Davis's* analysis dealing with a categorically different type of investment is less applicable to the TDFs here because "there is no one-size-fits-

all approach" to pleading comparisons. *Id.*, at 484. Still, the AC, unlike the complaint in *Davis*, alleges that the JPMorgan TDFs and the Comparator Funds ***all*** similarly invest in domestic and international equities. AC, ¶¶ 79, 98. Lastly, the comparisons in *Matney* failed because they compared TDFs with different glidepaths in alleging that the actively managed funds were unjustifiably expensive because, categorically, "passively managed funds outperform actively managed funds." *Matney*, 80 F.4th at 1153. In the recent decision of *Macias*, the court applied *Matney* to uphold materially similar allegations to the allegation here. *See Macias*, No. 23-cv-01496, slip op., at 18-20. Like *Macias*, "Defendant[] dispute[s] the accuracy of [plaintiffs' comparator] characterization" but "resolution of this issue is not appropriate at this stage." *Id*. Defendant also makes much of the two unpublished decisions in the out-of-circuit action of *Beldock v. Microsoft Corp.*, but that court actually held that "[a]s it did in its prior order, the court concludes that it need not consider whether Plaintiffs' proposed comparators are meaningful benchmarks against which to measure the BlackRock TDFs' performance." *Beldock v. Microsoft Corp.*, No. 22-CV-1082, 2023 WL 3058016, at *3 n.7 (W.D. Wash. Apr. 24, 2023).

Defendant also ignores the intertwined allegations of comparisons against the Morningstar Index for performance and the rankings against the Morningstar Category. The AC actually alleges that "by the start of the Class Period in 2018, the JPMorgan TDFs underperformed the Morningstar Index on average by ***31.40% on a three-year basis*** and 7.12% on a five-year basis[,]" and "the JPMorgan TDFs had some of the ***worst*** fund rankings." *Id*., ¶ 111, 117 (emphasis added).[7]

---

[7] The alleged underperformance exceeds the degree and length of underperformance found plausible in other cases. *See Johnson*, 122 F.4th at 216-18 ("diligent investment professionals assess a fund's prior performance based on a three-year trailing performance."); *Omnicom*, 2021 WL 3292487, at *4 (underperformance "by as much as 2.92% on a trailing five-year basis" was enough); *Kistler*, 2024 WL 3292543, at *11 (multiple comparisons of "three-year and five-year returns" and underperformance "by 3%" was sufficient); *Thomson v. Caesars Holdings Inc.,* 661 F. Supp. 3d 1043, 1058 (D. Nev. 2023) ("I disagree with [the] characterization that plaintiffs merely

Defendant tries to evade this point by attempting to misconstrue the AC as just alleging that performance against the Morningstar Index was "mediocre." MTD at 11. It is important to note that the comparisons to the Morningstar Category, Morningstar Index, and Comparator Funds, are to be considered "as a whole." *Hughes I*, 595 U.S. at 177. While comparing the JPM TDFs to individual funds or an index *alone* may be insufficient, courts routinely hold that an index alongside specific comparators are holistically plausible as a matter of fact and law at this stage. *See*, *e.g.*, *Kistler*, 2024 WL 3292543, at *10 ("the S&P Target Date Indices assist the plaintiffs in plausibly showing that their peer TDF performance comparisons are not cherry picked."); *Brown-Davis v. Walgreen Co*., No. 19-cv-05392, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020) ("the "Morningstar Lifetime Moderate Index—and three comparator target-date funds" are sufficient); *Snyder v. UnitedHealth Grp., Inc*., No. 21-cv-1049, 2021 WL 5745852, at *3 (D. Minn. Dec. 2, 2021) (same); *Macias*, 23-cv-01496, Slip. Op, at 3-4 (same); *Gaines*, 663 F. Supp. 3d at 829-30.

Defendant also preemptively argues that amending to allow Plaintiffs to add allegations regarding "the S&P Target Date Indices would not help Plaintiffs' pleading failures." MTD at 16. Even if, *arguendo*, there are deficiencies, the S&P "*through*" Target Date Index, is different and more narrowly tailored index than the general S&P Target Date Index, and has been held to be a meaningful comparator for through TDFs. The Sixth Circuit in *Johnson* accepted the allegation that "the S&P target date fund benchmark, [is] an 'industry-accepted target date benchmark for

---

allege two years of underperformance" where it included the "five-year periods leading up to 2017" plus two more years); *Sellers*, 647 F. Supp. 3d at 30 ("one-, three-, and five-year returns" were enough); *Falberg v. Goldman Sachs Grp., Inc*., No. 19-cv-9910, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) ("a 1% difference in net returns each year can reduce a participant's savings by over a fourth by retirement."); *Karg v. Transamerica Corp*., No. 18-cv-134, 2019 WL 3938471, at *7 (N.D. Iowa Aug. 20, 2019) (better performance "in certain years within the period" did not undermine the fact that "each of the challenged funds failed to outperform the comparable funds or the relevant benchmark over the relevant period as a whole."); *Bouvy v. Analog Devices, Inc*., No. 19-cv-881, 2020 WL 3448385, at *9 n.7 (S.D. Cal. June 24, 2020) (similar).

'Through' target date funds used by investment professionals.'" *Johnson*, 122 F.4th at 210; *see also Kistler*, 2024 WL 3292543 (upholding the use of the S&P Target Date Index); *Trauernicht*, 2023 WL 5961651, at *13 (same). Likewise, in *Macias* the court held that "Plaintiffs' SAC adds new allegations that the S& P Target Date [through] Index ("S&P Comparator Index") is a 'prominent and widely-accepted target date benchmark for 'through' target date funds, like the [JPM TDFs] and the Comparator Funds' and that JPMorgan itself benchmarked the JPM TDFs against the S&P Comparator Index." *Macias*, No. 23-cv-01496, Slip Op. at 10. This is meaningful because "[i]t strains credulity" that "JPMorgan chose these benchmarks with no consideration of similarities they have with the JPM TDFs" making it a "a meaningful basis for comparison." *See id*., at 20. Defendant again fatally relies on *Beldock* for their argument. *Beldock* did not include the same factual support as *Macias*. In reality, no "circuit court … has held that a market index can never serve as a meaningful benchmark." *Johnson*, 122 F.4th at 218.

### 3.      The JPMorgan TDFs' excessive fees

"[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund[,]" but "[a] claim of breach is sufficiently made out, however, when a plaintiff plausibly alleges that the higher fees were unjustified or otherwise improper." *Daggett*, 731 F. Supp. 3d at 137; *Zimmerman*, 2024 WL 1135773, at *7; *Terraza*, 241 F. Supp. 3d at 1076 (same). Defendant's excessive fee arguments fail for the same reason as their performance arguments. For starters, Defendant fatally fails to address fees and performance allegations together. *But see id.*; *Fleming*, 655 F. Supp. 3d at 1267; *Anderson*, 2022 WL 951218, at *8. Because the excessive fee allegations are intertwined with the performance of allegations, Plaintiffs are not insisting that Defendant "consider fees in a vacuum." MTD at 20. Relately, although Plaintiffs

need not rule out all other plausible explanations, *see Perkins*, 2024 WL 1574342, at *3, Plaintiffs have done so by ruling out any possible explanation that performance justifies fees.

Defendant also fails to acknowledge that the Comparator Fund comparisons are intertwined with the median to infer imprudence "as a whole." *Hughes I*, 595 U.S. at 177. Using publicly available category medians shows that Defendant should have known the fees were excessive as well as showing that the Comparator Fund's, with their similar attributes, are "comparisons [that] are not cherry picked." *Kistler*, 2024 WL 3292543, at *10; *see also Seibert v. Nokia of Am. Corp.*, No. 21-cv-20478, 2024 WL 2316551, at *3 (D.N.J. May 22, 2024) ("median and average expense ratios" alone were not enough, but adding "two TDFs offered by T. Rowe Price and American Funds to demonstrate the Plan's underperformance" was sufficient); *Brown-Davis*, 2020 WL 8921399, at *1; *Snyder*, 2021 WL 5745852, at *3; *Macias*, 23-cv-01496, Slip. Op, at 3-4. It is for this reason that Defendant's cases are all distinguishable. Those comparisons were only to "broad investment strategy categories, without more," unlike the additional comparators here. MTD at 22 (quoting *Matney*, 80 F.4th at 1155).

Defendant makes a nonsensical argument that "Plaintiffs have not identified any ways in which the fees collected by JPMorgan are similar to those collected by the Comparator Funds" by pointing to out-of-Circuit cases discussing excessive *recordkeeping* fees not – investment fees. MTD at 21. Hence why Defendant quotes decisions talking about "plans offering the same services for less" rather than investments. *Id*. (quoting *Matousek*, 51 F.4th at 279); *but see Perkins*, 2024 WL 1574342 at *5 (distinguishing *Matousek*). Nor does Defendant explain what "services" would differ between the funds. Similarly nonsensical and unsupported is the argument that "Plaintiffs have not identified any ways in which the fees collected by JPMorgan are similar to those collected by the Comparator Funds." MTD at 21. This is not a pleading standard, and in any event, expense

ratios are all collected the same way, and Plaintiffs are not opposing how fees are collected. Finally, *Albert* does not help Defendant, because those plaintiffs alleged that, categorically, "actively managed funds were too expensive[,]" which, again, is not Plaintiffs' theory. *Albert*, 47 F.4th at 581-82.

### C.    The AC is Timely

 "[U]nder § 1113(1), suit must be filed within six years of "the date of the last action which constituted a part of the breach or violation.'" *Sulyma*, 589 U.S. at 180–81. Also, a "suit must be filed within three years of 'the earliest date on which the plaintiff had actual knowledge of the breach.'" *Id*. (quoting § 1113(2)). Critically, "the plaintiff 's knowledge must be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal.'" *Id., at* 185 (citation omitted). Defendant does not mention *Sulyma*, but it is the most binding precedent.

In *Sulyma*, the plaintiff filed the complaint "more than three years after petitioners had disclosed their investment decisions" and the fiduciaries submitted records showing that Sulyma visited the benefits website repeatedly. *Sulyma*, 589 U.S. at 181-82. This did not show actual knowledge, because "§ 1113(2) begins only when a plaintiff actually is aware of the relevant facts, not when he should be" and "even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure." *Id.*, at 187–89. Before and after *Sulyma*, courts have recognized "the fact that plaintiffs may have received notices or disclosures about a breach is not sufficient to establish actual knowledge." *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-cv-9910, 2022 WL 538146, at *9 (S.D.N.Y. Feb. 14, 2022)); *see also Su v. Johnson*, 68 F.4th 345, 356 (7th Cir.) (disclosures "that *might* have revealed [a] breach of [] fiduciary duties" but "[t]hat theory would have been a stretch to establish constructive ("should have known") knowledge. It certainly falls far short of actual knowledge."); *Davis*, 2020 WL 1248580, at **3, 4 ("if the fiduciary made

an imprudent investment decision, actual knowledge would require the plaintiff to have knowledge of how the fiduciary selected the particular investment." But, "mere notification that [certain] funds were in the Plan menu falls short of providing 'actual knowledge.'"); *Hamer*, 2024 WL 5457448, at *7 ("actual knowledge of fees and performance data that are 'clearly disclosed' by plan documents" is not acknowledge of a breach); *Bouvy*, 2020 WL 3448385, at *4 ("Here, the availability of fee and expense ratios did not provide plaintiff with 'actual knowledge of the specifics of Defendant's decision-making process."); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc*., No. 17-cv-07243, 2018 WL 11361335, at *6–7 (N.D. Cal. Nov. 19, 2018) ("actual knowledge of the breach usually require[s] some knowledge of how the fiduciary selected the investment.'"); *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 692-93 (D. Conn. 2018) (same).

In *Kohari*, like here, the "Defendants argue that Plaintiffs' claims are time-barred under the three-year limitations period because 'ERISA requires plan administrators to deliver to plan participants annual disclosures that reveal the fees charged for investment options, and to provide ongoing information about fund performance.'" *Kohari v. MetLife Grp., Inc*., No. 21-cv-6146, 2022 WL 3029328, at *6 (S.D.N.Y. Aug. 1, 2022); *see also* MTD at 20, 30 (arguing the same). The court was unpersuaded. First, "disclosure, alone, is insufficient to establish 'actual knowledge'." *Id.*, at *6 (citing *Sulyma*, 140 S. Ct. at 777). Second, "the Complaint alleges that, "Plaintiffs did not have knowledge of all material facts ... necessary to understand that Defendants breached their fiduciary duties." *Id.*; *see also Hamer*, 2024 WL 5457448, at *7 (same). Finally, "Neither the Complaint nor Defendants contend that the annual disclosures sent to Plaintiffs provided information beyond the fee and performance data—***specifically, information regarding the underlying process for reaching decisions*** as to each transaction or investment, or as ***to whether the fees themselves are reasonable***." *Id.*, at *6 (citing *Vellali*, 308 F. Supp. 3d at 692-93) (emphasis

26

added). Here too, Defendant did not fully disclose the information required to know all necessary information which is apparent from the face of the AC. *See* AC, ¶¶ 62-64.

Moreover, "actual knowledge" in the ERISA sense "means when [plaintiff] has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). "[M]aterial facts" will "include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Id*. (quoting *Gluck v. Unisys Corp*., 960 F.2d 1168, 1177 (3d Cir. 1992)). "[D]isclosure of a transaction […] cannot communicate the existence of an underlying breach.'" *Id.* (quoting *Fink v. National Sav. & Trust Co.,* 772 F.2d 951, 957 (D.C.Cir. 1985)). Accordingly, neither the disclosures of "the elimination of the JPMorgan TDFs" nor the "funds' final performance and costs" speak to the *processes* leading up to that point in November of 2017. MTD at 30. None of the Plaintiffs have actual knowledge of all material facts.

Defendant's fall-back position based on the six-year period of repose fares no better. Defendant again fails to address seminal Supreme Court precedent. In *Tibble I* the Court held that because an ERISA fiduciary's duty is "continuing[,] […] so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." *Tibble I*, 575 U.S. at 530. Defendant continued to imprudently offer the JPMorgan TDFs within six years before the lawsuit was filed. *See* MTD at 30 (conceding the JPMorgan TDFs languished in the Plan until November 17, 2021). Plaintiffs are not suing for "breaches that occurred more than six (6) years before the filing of the Complaint." *Id*. The allegations "that refer to alleged imprudence or disloyalty prior to May 20, 2019" *id*. at 31, provide background information, such as chronic and knowable underperformance, rather than to expand the start of the Class Period (and period of damages). Here, the JPMorgan TDFs were still offered more two years into the Class Period, unlike the

transactions and challenged investments in Defendant's cases. *See Aguilar v. Nat'l Prod. Workers Union Severance Tr. Plan*, No. 18-CV-03057, 2019 WL 9514732, at *3 (C.D. Cal. Nov. 1, 2019) (the Class Period started on April 11, 2012, but the plaintiffs challenged a "Pre-2012 Improper Transaction."); *Quigley on behalf of ConocoPhillips Sav. Plan v. ConocoPhillips Co.*, 756 F. Supp. 3d 479, 491-93 (S.D. Tex. 2024) (The defendants "clos[ed] the [challenged] Funds to new investments […]more than 10 years before this lawsuit was filed."). Defendant breached its continuing duty to monitor the JPMorgan TDFs within six years of the filing of this lawsuit.[8]

### D. Forfeitures Were Improperly Used

#### 1. The governing law and Plaintiffs' particularized allegations

The plausibility of cases involving forfeiture allegations are "context-specific." *Hughes I*, 595 U.S. at 177. In all cases, though, ERISA "makes clear that the duty of prudence trumps the instructions of a plan document." *Fifth Third Bancorp*, 573 U.S. at 421. ERISA's duty of loyalty is "the highest known to the law." *Bussian*, 223 F.3d at 294. As the Fifth Circuit instructs, taking actions merely "consistent with the provisions of the Plan and with ERISA […] does not mean that a fiduciary's acts undertaken […] may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Bussian*, 223 F.3d at 289, 295 (quoting § 1104(a)(1)); *see also id.*, at 292 n.7 ("A statement that a termination is in accordance with the laws and regulations […] is not a statement that the" action was in "accordance with fiduciary standards set forth in Title I of ERISA."); *Sweda*, 923 F.3d at 333 ("while fiduciaries have discretion in plan management, that discretion is bounded

---

[8] Plaintiffs agree that the Class Period should start on May 20, 2019. *See* MTD at 30. However, all allegations from the period before May 20, 2019 still demonstrate information knowable to Defendant in real time. Defendant's argument regarding the start of the Class Period, "at most[,] establish that there are issues with the scope of the claims rather than that they are entirely futile." *Parker v. Tenneco Inc.*, No. 23-CV-10816, 2025 WL 1173011, at *7 (E.D. Mich. Apr. 22, 2025).

by the prudent man standard."); *Main v. Am. Airlines Inc*., 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) ("Defendants argue, though, that because these practices are allowed it is illogical to infer disloyalty from them. But that is not the whole of Plaintiffs' allegations."). The foundational principle that discretionary plan language is not the end of the analysis under ERISA is why courts routinely uphold claims based on similar forfeiture allegations as here. *See Stewart v. Nextera Energy, Inc*., No. 23-cv-81314, Slip Op., (S.D. Fla. Aug., 14, 2025) (Ex. C); *Rodriguez v. Intuit Inc*., 744 F. Supp. 3d 935 (N.D. Cal. 2024); *Becerra v. Bank of America Corp*., 24-cv-921 (W.D.N.C. Aug. 12, 2025) (Ex. D)); *McManus v. Clorox Co*., No. 23-cv-05325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ("*McManus II*"); *Perez Cruet v. Qualcomm Inc*., No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024); *Buescher v. N. Am. Lighting, Inc*., No. 24-cv-2076, 2025 WL 1927503 (C.D. Ill. June 30, 2025); *Su v. Allen,* No. 17-cv-784, 2023 WL 6323310 (W.D. Ky. Sept. 28, 2023).

Critically, "[d]espite the ability of an ERISA fiduciary to wear two hats, 'ERISA does require ... that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Bussian*, 223 F.3d at 295 (quoting *Pegram v. Herdrich,* 530 U.S. 211 (2000). In *Bussian* the Fifth Circuit repeatedly mandated that, "[t]he presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised[,]" which means "to 'at a minimum' undertake an 'intensive and scrupulous independent investigation of [the fiduciary's] options.'" *Id.*, at 299. *Bussian* applies directly to forfeiture case, because "[i]f there is a breach, then abiding by the Plan terms cannot save defendants." *McManus II*, 2025 WL 732087, at *4 (upholding allegations despite discretionary plan language); *see also Perez Cruet*, 2024 WL 2702207, at *3 (same); *Buescher*, 2025 WL 1927503, at *11 (same); *Becerra*, 24-cv-921 (same).

## 2. Defendant's strawman arguments

Rather than making broad *per se* allegations that "allocation of forfeitures toward offsetting employer contributions [i]s *always* a breach of the fiduciary duty of loyalty[,]" Plaintiffs plausibly allege that breaches occurred "in this particular case." *Buescher*, 2025 WL 1927503, at *11 (emphasis in original). Defendant makes strawman arguments in a failed attempt to liken the AC to dismissed complaints that did not involve the same degree of specificity as here. In *Buescher*, the court refused to fall for the same ploys. Before coming to its ultimate conclusions, the court laid out the various holdings and frameworks of the forfeitures opinions issued up to that point including, *Hutchins I* and *II*, *McManus I* and *II*, and various other cases. *See Buescher*, 2025 WL 1927503, at **12-15. In applying the cases, the court upheld the prudence and loyalty allegations because that complaint, like the AC, included specifics that the defendants "failed to consult with an independent non-conflicted decisionmaker" and "fail[ed] to exhaust forfeitures annually" under tax law which infers procedural imprudence. *Id*. The AC alleges the same specifics plus provides the amounts allocated inferring the conflict was not handled with care. *See* AC, ¶¶ 137-39-48; *see also Parker*, 2025 WL 1173011, at *6 ("specific dollar amounts" and "conflict of interest" allegations may be plausible); *Stewart*, No. 23-CV-81314, at 13 (same); *McManus II*, 2025 WL 732087 (successfully alleging procedural failures to guard against conflicts of interest).

Like the defendants in *Buescher,* Defendant unavailingly, "consistently describe[s] Plaintiff's position in these or similar terms: 'According to Plaintiff, forfeitures can *never* be used to offset employer contributions.'" *Buescher*, 2025 WL 1927503, at *10 (emphasis in original). Exactly like here, "Plaintiff is not asserting a categorical rule that employers must pay plan expenses. Nor would his claim effectuate such a result. Far more narrowly, he is merely arguing that" fiduciary discretion in how to use forfeitures "must be made in accordance with ERISA's

fiduciary directives." *Id.*, at *11. Truly, Defendant committed breaches by failing "to engage in a reasoned and impartial decision-making process" and failing "to consider whether participants would be better served by another use of these Plan assets after considering *all relevant factors.*" *Rodriguez*, 744 F. Supp. 3d at 945 (emphasis added). Plaintiffs do not advance a "broad" theory that "a 'fiduciary would always be required to use [f]orfeitures to pay administrative costs even if the plan gave it the option to reallocate those funds to reduce employer contributions.'" MTD at 28 (quoting the disanalogous case of *Cain v.*, *Siemens Corp.*, No. 24-CV-8730, 2025 WL 2172684, at *4, 5 (D.N.J. July 31, 2025)).

Defendant relies heavily on the decision in *Middleton, v. Amentum Parent Holdings, LLC*, 2025 WL 2229959 (D. Kan. Aug. 5, 2025)*,* but that complaint did not include any details, nonetheless similar details to the AC. The AC is materially similar to the upheld complaints in *Buescher*, *McManus II*, *Perez Cruet*, *Parker, Stewart, Rodriguez*, and numerous other cases involving conflicts of interest and specific allegations.[9] It is also not true that "holding Defendant's use of the forfeited funds to be imprudent would create an entirely new benefit to Plaintiffs." MTD at 23. The plaintiffs in *Hutchins II* were seeking "*more* benefits than the Plan documents set out" because of *the settlor language in that plan. Id.* (quoting *Hutchins v. HP, Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025) (*Hutchins II*). In *Hutchins II*, opposite of here, the plan language "reserves to HP, *as settlor, the decision to defray administrative costs borne by Plan participants*" using forfeitures, so there was effectively <u>*no fiduciary discretion allowed to offset plan expenses*</u>. *Hutchins II*, 767 F. Supp. 3d at 927. Hence why those claims were implausible. There are no settlor-

---

[9] In fact, many cases granting motions to dismiss granted leave to amend to add more specific allegations, despite discretionary plan language. *See Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732, 2024 WL 4508450, at *5 (S.D. Cal. Sept. 19, 2024); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024) (*Hutchins I*); *Cain*, 2025 WL 2172684, at *6; *Fumich v. Novo Nordisk Inc.*, No. 24-cv-9158, 2025 WL 2399134, at *9 (D.N.J. Aug. 19, 2025).

imposed limitations here. That a potential conflict of interest does not "automatically amount[] to a breach" does not mean that it *cannot* amount to a breach. MTD at 28 (quoting *Hutchins II*, 767 F. Supp. 3d at 925). The plan language in *Hutchins* is also why The Secretary of Labor's brief in the *Hutchins* appeal does nothing to help Defendant. MTD at 27 (discussing Brief for the U.S. Secretary of Labor as Amicus Curiae Supporting Defendant-Appellee ("SOL Br."); *see also* SOL Br., at 14 ("These Plan provisions make clear that the Plan sponsor, as settlor, is solely responsible" for the decision making). In fact, the SOL has itself successfully brought claims to restore "forfeited funds the Secretary [of labor] says should've gone into [participant] accounts." *Su*, 2023 WL 6323310, at \*2. This accords with the "context-specific" inquiry that ERISA requires. *Hughes I*, 142 S. Ct. at 740. To be sure, the amicus poignantly narrowed its arguments to "this case" "based on the facts plead" in *Hutchins*, meaning, "the Plan's particular terms." SOL Br., at 1, 11, 14; *see also* MTD at 27 (quoting the same). The amicus is of no value to this Plan's language and particularized facts. Nor is the amicus brief at odds with *Buescher*, *McManus II*, *Perez Cruet*, *Parker, Bussian, Fifth Third Bancorp* and numerous other cases dealing with fiduciary discretion. Defendant relies on *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) to argue that "a fiduciary does not breach its duties when it complies with a lawful plan document." MTD at 25. This legal inaccuracy directly conflicts with *Bussian* and *Fifth Third Bancorp* which expressly hold that discretionary plan language never forecloses the possibility that fiduciaries breached their duties of prudence and loyalty.

In the same light, other laws, and a *proposed* regulation, that permit forfeiture to be used to offset recordkeeping fees and/or employer contributions also do not foreclose Plaintiffs' claims. Under Fifth Circuit precedent, actions that are generally permitted by other parts of ERISA and tax law does not relieve Defendant of the duties of loyalty and prudence. *See Bussian,* 223 F.3d at

289, 292 n.7. Defendant's argument to the contrary is as incorrect as it is pointless, because Plaintiffs do not ask Defendant to violate tax law, only to adhere to the exclusive benefits rule in a way that accords with tax law. Simply because the "Treasury regulations and [ERISA] would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that […] using forfeitures to offset [the Company's] mandatory Matching Contributions within the parameters of this specific Plan […] was permissible, lawful, or inconsistent with a finding that [Defendants] violated ERISA[]." *Rodriguez*, 744 F. Supp. 3d at 947.

Defendant relies on *McWashington*, but that case merely held that the tax code means that "plaintiffs must, to state a plausible claim of imprudence and/or disloyalty, plead something more[,]" such as the particularized allegations in this case. *McWashington v. Nordstrom, Inc*., No. 24-cv-1230, 2025 WL 1736765, at *14 (W.D. Wash. June 23, 2025). The actual reason why those claims were "implausible" MTD at 26, was because the plan language did not grant fiduciary discretion regarding forfeitures. *See McWashington,* 2025 WL 1736765, at *13. Also contrary to Defendant's mischaracterizations, courts, even those granting dismissal, do not hold that "an ERISA fiduciary cannot be held liable if it complies with federal regulations." MTD at 26 (misconstruing *Hutchins I*, 737 F. Supp. 3d at 864). *Hutchins I* actually held that, "neither [the existing regulation,] 26 C.F.R. § 1.401 7(a)[,] nor the proposed Treasury regulation … outright forecloses Plaintiff's theory of liability." *Hutchins I*, 737 F.Supp.3d at 859.[10] The tax code is far more relevant in demonstrating that Defendant committed "a violation of IRS and general ERISA requirement that forfeitures are to be exhausted during the year in which they are incurred." AC, ¶

---

[10] Indeed, many cases have dismissed forfeiture allegations without prejudice, because these laws do not foreclose the legal possibly of forfeiture claims in an amended complaint. *See*, *e.g.*, *id.*; *McManus v. Clorox Co*., No. 23-cv-05325, 2024 WL 4944363, at *3 (N.D. Cal. Nov. 1, 2024) (*McManus I*); *Fumich*, 2025 WL 2399134, at *7; *but see Middleton*, 2025 WL 2229959, at *19 (no leave to amend because the plaintiffs "are currently on their Third Amended Complaint.").

148; *see also Buescher*, 2025 WL 1927503, at *15 ("the theory that the failure to exhaust forfeitures annually is an imprudent decision."). Defendant breached its fiduciary duties.

### E.    Plaintiffs' Oppose Partial One-Sided Discovery

Although Plaintiffs' claims are meritorious, Plaintiffs are willing to entirely stay discovery until a decision is issued. However, Plaintiffs oppose "targeted discovery addressing statute of limitations issues[,]" MTD at 32, because the Supreme Court and Defendant's refusal to provide documents has rendered Defendant's "actual knowledge" arguments meritless. *See Sulyma*; AC, ¶¶ 61-64. Defendant's reliance on *Colonna v. LoanDepot.com LLC*, No. 24-cv-0376, 2024 WL 5047875 (Dec. 9, 2024) (Starr, J.) is misplaced because that case was brought under the Texas Deceptive Trade Practices Act, not ERISA. Defendant baldly states that "there would be no prejudice to Plaintiffs" without even stating what Defendant's discovery efforts would entail. MTD at 33. Discovery would be, prejudicially, a waste of time and resources.

## IV.    CONCLUSION

Plaintiffs respectfully request that Defendant's motion to dismiss be denied, or alternatively, Plaintiffs be granted leave to amend under the Fifth Circuit's "liberal pleading presumption […] in favor of granting leave to amend." *Dueling v. Devon Energy Corp*., 623 F. App'x 127, 128 (5th Cir. 2015).

Dated: September 15, 2025                    Respectfully submitted,

> */s/ Mark K. Gyandoh*
> Mark K. Gyandoh, Esquire
> (Admitted *Pro Hac Vice*)
> James A. Maro, Esquire
> (Admitted *Pro Hac Vice*)
> **CAPOZZI ADLER, P.C.**
> 312 Old Lancaster Road
> Merion Station, PA 19066
> Email:  markg@capozziadler.com
>                   jamesm@capozziadler.com

34

Telephone: (610) 890-0200

*Counsel for Plaintiffs and the Putative Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:   <u>*/s/Mark K. Gyandoh*</u>
       Mark K. Gyandoh, Esq.

36