**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MONICA DEL BOSQUE, JENNA RODRIGUEZ, FABIOLA SOLIS-GARAY, NICOLE WARE, and PHILIP WATTERSON, Individually and on behalf of all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 3:25-cv-01270-G** |
| **v.** | § § | |
| **COCA-COLA SOUTHWEST BEVERAGES LLC,** | § § § | |
| **Defendants.** | § | |

**DEFENDANT COCA-COLA SOUTHWEST BEVERAGES LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND TO STAY DISCOVERY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................... 1

LEGAL ARGUMENT ..................... 1

I. Plaintiffs Fail To Sufficiently Allege An Imprudence Claim ..................... 1

A. The Morningstar Information in the Amended Complaint is Not a Public Disclosure From Which Imprudence Can Be Inferred ..................... 2

B. Unlike the Cases They Rely Upon, Plaintiffs' Amended Complaint Lacks Allegations Regarding Flawed Process ..................... 3

C. Plaintiffs' Excessive Fees Allegations Do Not Defeat the Motion ..................... 5

II. As a Matter of Law, it is Not Imprudent to Apply Forfeited Monies Towards Defendant's Non-Elective Matching Contribution ..................... 6

III. Plaintiffs' Claims are Either Untimely or May Be Untimely ..................... 9

IV. Discovery Should be Stayed or, in the Alternative, Bifurcated ..................... 10

CONCLUSION ..................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariel Armenta v. WillScot Mobile Mini Holdings Corp., et al.*,
2025 WL 2645518 (D. Az. Sept. 15, 2025) ....................8

*Buescher v. N. Am. Lighting, Inc.*,
2025 WL 1927503 (C.D. Ill. June 30, 2025) ....................6

*Daggett v. Waters Corporation*,
731 F. Supp. 3d 121 (D. Mass. 2024) ....................2, 3, 5

*Dimou v. Thermo Fisher Scientific Inc.*,
2025 WL 2611240 (S.D. Ca. Sept. 9, 2025) ....................7

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. March 2023) ....................2

*Intel v. Sulyma*,
589 U.S. 178 (2020) ....................10

*Johnson v. Parker-Hannifin Corp.*,
122 F.4th 205 (6th Cir. 2024) ....................3

*Locascio v. Fluor Corporation*,
2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ....................5

*Macias v. Sisters of Charity of Leavenworth Health System et al.*,
No. 23-cv-01496, Slip. Op. (D. Colo. July 24, 2025) (Opp. Ex. A) ....................3, 4

*McManus II v. Clorox Co.*,
2024 WL 732087 (N.D. Cal. Mar. 3, 2025) ....................6

*Megan Estay et al. v. Ochsner Clinic Foundation et al.*,
2025 WL 2644782 (E.D. La. Sept. 15, 2025) ....................9

*Parker v. Tenneco Inc.*,
2025 WL 1173011 (E.D Mich. Apr. 22, 2025) ....................6

*Perez Cruet v. Qualcomm Inc.*,
2024 WL 2702207 (S.D. Cal. May 24, 2024) ....................6

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D.Cal. 2024) ....................6, 7

*Sellers v. Trustees of Coll.*,
647 F. Supp. 3d 14 (D. Mass. 2022) ....................3

*Stewart v. Nextera Energy, Inc.*,
No. 23-cv-81314 (S.D. Fla. Aug. 14, 2025) ....................6

*White v. Chevron*,
2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) *aff'd,* 752 Fed. Appx. 453 (9th Cir. 2018) ....................1, 5

*Zimmerman v. Cedars-Sinai Medical Center, et al.*,
2024 WL 1135773 (C.D. Ca. Feb. 18, 2024) ....................5

**Statutes**

29 U.S.C. § 1113(2) ....................9

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ....................1, 6, 9

Defendant Coca-Cola Southwest Beverages LLC ("Defendant" or the "Company"), by and through its attorneys, respectfully submits this Reply Memorandum of Law in response to Plaintiffs' opposition papers and in further support of its motion to (1) dismiss the Amended Complaint ("AC") and (2) stay discovery pending the resolution of the instant motion or, in the alternative, to bifurcate discovery to permit Defendant to fully develop its statute of limitations defenses prior to engaging in full merits discovery.[1]

## PRELIMINARY STATEMENT

While Plaintiffs' memorandum of law in opposition to the Company's motion to dismiss argues in conclusory fashion that the AC contains sufficient allegations to withstand the Motion, both the actual allegations contained in the AC and the relevant case law do not support that outcome. The AC simply fails to state a claim for breach of the ERISA duties of prudence and loyalty and, therefore, should be dismissed as a matter of law.

## LEGAL ARGUMENT

### I. Plaintiffs Fail To Sufficiently Allege An Imprudence Claim

As detailed in the Motion, when assessing an imprudence claim, a court must "focus on a fiduciary's *conduct* in arriving at an investment decision, *not on its results*, and ask[s] whether a fiduciary employed the appropriate *methods* to investigate and determine the merits of a particular investment." *White v. Chevron*, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) *aff'd,* 752 Fed. Appx. 453 (9th Cir. 2018) (internal citation omitted) (emphasis added). Plaintiffs acknowledge the pleading requirement to allege flaws in Defendant's process in selecting and maintaining the JPMorgan TDFs but fail to include any such factual allegation. Although Plaintiffs' Opposition

---

[1] The Company's initial moving papers filed in support of its motion to dismiss and stay discovery is hereinafter referred to as the "Motion." Plaintiffs' opposition to Defendant's Motion is hereinafter referred to as "Plaintiffs' Opposition," "Plaintiffs' Opp.," or "Opp.". Unless otherwise stated, the abbreviated terms used herein are those defined in Defendant's Motion.

contains a section titled "Defendant's Imprudent Processes Surrounding the JPMorgan TDFs" (Opp. at 4) and a section titled "Defendant's imprudent investment monitoring process" (Opp. at 13-15), the pleading allegations in these sections do not address Defendant's processes in selecting or maintaining the JPMorgan TDF funds at all. Instead, Plaintiffs rely solely on their allegations of underperformance and excessive fees as compared to their cherry-picked so-called "Comparator Funds." This is insufficient not only because Plaintiffs fail to provide meaningful benchmarks, but also because allegations of underperformance and/or excessive fees alone cannot result in the denial of Defendant's motion to dismiss.[2]

### A. The Morningstar Information in the Amended Complaint is Not a Public Disclosure From Which Imprudence Can Be Inferred

Plaintiffs rely heavily on the decision in *Daggett v. Waters Corporation*, 731 F. Supp. 3d 121 (D. Mass. 2024), to support the position that their pleadings are sufficient to state a claim of imprudence. Opp. at 13. However, *Daggett* is clearly distinguishable. Plaintiffs would have this Court conclude that the Morningstar rankings are "allegations of public concern" sufficient to alert the Defendant that the JPMorgan TDFs were underperforming. However, *Daggett* involved funds that allegedly "'underwent a strategy overhaul' whereby its portfolio managers deviated from the Funds' 'preset' investment trajectory and altered their 'glide path allocations' such that investors … faced 'unnecessary risk[.]'" *Id.* at 131. The court acknowledged these allegations were sufficient to allege that the defendants were not properly monitoring and assessing the funds at

[2] Plaintiffs rely on *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821 (N.D. Ill. March 2023), to argue that their so-called comparator funds provide an adequate benchmark for the JPMorgan TDFs. However, *Gaines* is distinguishable because in that case it was clear to the defendants and the court what the common elements were between the challenged funds and the comparator funds. In contrast, here, there are no indications regarding the allocation between equities and bonds, and Plaintiffs do not specify the actual investment category, such as small-cap, emerging markets, mid-cap, or large-cap. Further, Plaintiffs do not attach the graph (identified as "Appendix A") which they refer to and which they allege demonstrates the ways in which the so-called Comparator Funds and the JPMorgan TDFs are similar. AC at ¶ 100. Moreover, while Defendant's Motion explained that Appendix A was not made available (Motion at pp.11-12), Plaintiffs' Opposition failed to provide that information.

issue. Further, in *Daggett*, the complaint cited to a March 2018 Reuters special report which discussed the same subject of "public concern" and, thus, showed that the alleged "unnecessary risk" was publicly known. *Id.* at 140-41.

Here, the AC lacks allegations of "public concern" relating to a "strategy overhaul" or an "unnecessary risk." The Morningstar rankings referenced in the AC do not equate to reporting of a specific "public concern".[3] Furthermore, regarding the relevant funds' alleged underperformance in *Daggett*, the plan committee waited **twelve years** before replacing the underperforming funds. Here, the Plan was established in 2017, and the JPMorgan TDFs were eliminated from the Plan lineup just four years later in November 2021— one third of the time it took the plan fiduciaries in *Daggett* to replace the relevant funds.

**B. Unlike the Cases They Rely Upon, Plaintiffs' Amended Complaint Lacks Allegations Regarding Flawed Process**

Plaintiffs emphasize the unpublished, unreported decision in *Macias v. Sisters of Charity of Leavenworth Health System et al.*, No. 23-cv-01496, Slip. Op. (D. Colo. July 24, 2025) (Opp. Ex. A), but their reliance is misplaced. While the court in *Macias* denied the defendants' motion to dismiss the second amended complaint, it was not because of the reasons asserted in Plaintiffs' Opposition. Plaintiffs claim that the court in *Macias* accepted "the exact allegations" concerning comparator funds that they assert in the AC and, as such, the Court should do so here. Opp. at 17-18. According to Plaintiffs, those allegations included that "each fund 'pursue[s] the same investment objectives as the [JPM TDFs], invest[s] primarily in equity (stock) and fixed income

[3] Notably, other cases cited by Plaintiffs to support their theory that Morningstar rankings constitute "public concern" are also distinguishable and, thus, do not support such a proposition. *See, e.g., Sellers v. Trustees of Coll.*, 647 F. Supp. 3d 14 (D. Mass. 2022) (ignored "public red flags" including a joint investigation by the Securities and Exchange Commission and New York Attorney General's Office relating to the fund's marketing practices, which were found to be "false and misleading."); *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 215 (6th Cir. 2024) (complaint alleged "a high rate of turnover prior to 2014" and "makes clear that the administrators were imprudent in light of the 'significant changes' in the Fund's recent history.").

(bond) securities' including 'U.S. and foreign securities as do the [JPM TDFs]' and 'utilize[s] a 'through' glide path' and, '[is] managed by well-known investment advisers.'" *Id.* (*citing Macias*, No. 23-cv-01496, Slip. Op., at 4). However, a review of the court's decision in *Macias* indicates that these allegations related to comparator funds did not convince the court to deny the defendants' motion to dismiss.

The plaintiffs in *Macias* included the Morningstar Target-Date Universe and Morningstar Lifetime Mod benchmark in the second amended complaint because they were previously identified as benchmarks in an exhibit to the plan's own investment policy statement ("IPS"). *Id.* at 5-6. The exhibit explicitly stated that the TDFs at issue were "benchmarked" to both the Universe and Lifetime Mod benchmarks. *Id.* at 6. As a result, the *Macias* Court stated that "[i]t strains credulity…that the Committee and JPMorgan chose these benchmarks with no consideration of similarities they have with the JPM TDFs." *Id*. at 20. Notably, the court had previously dismissed the first amended complaint, which only included allegations relating to the comparator funds, without any additional allegations pertaining to flawed processes. *Id.* at 24 ("[t]he SAC's additional allegations about Defendant's flawed processes sufficiently bolster these allegations to plausibly show imprudent conduct."). This inclusion of the IPS-related allegations in the second amended complaint -- which stated specific steps that the plan administrators would take to review the fund performance and remove those funds that were underperforming -- that swayed the court to deny the defendants' motion to dismiss. *Id*. *at* 17 ("Plaintiffs have plausibly pled, at minimum, flawed processes by Defendants in failing to comply with the requirements of

the IPS."). In contrast, the current AC does not allege any flawed processes leading to the selection or retention of the JPMorgan TDFs.[4]

### C. Plaintiffs' Excessive Fees Allegations Do Not Defeat the Motion

Plaintiffs' allegations and arguments regarding the purported excessive fees charged by the JPMorgan TDFs do not save Plaintiffs' imprudence claims from dismissal, as the AC only offers a conclusory comparison to the Plaintiffs' so-called "Comparator Funds" without factual support. These allegations, without more, are insufficient to withstand a motion to dismiss.[5] As the Ninth Circuit held in *White v. Chevron*, the facts alleged are "insufficient to support a plausible inference of breach of the duty of…prudence…" *White*, 752 Fed.Appx. at 455. Rather, "the allegations show[] only that [Defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund. None of the allegations ma[ke] it more plausible than not that any breach of a fiduciary duty ha[s] occurred." *Id.* Plaintiffs seek to rely on *Daggett* to support their position that the JPMorgan TDFs' purported high fees were "unjustified" or "improper." However, in *Daggett*, the plaintiffs asserted that the plan was so massive that the plan committee should have used its bargaining power to negotiate lower fees. 731 F. Supp. 3d at 129. The fact that they did not, the plaintiffs asserted, made the defendant's conduct imprudent. *Id*. Here, no such bargaining power allegations exist in the AC.

---

[4] Notably, this Court in *Locascio v. Fluor Corporation*, 2023 WL 320000 (N.D. Tex. Jan. 18, 2023), acknowledged the significance of allegations regarding flawed processes. The Court stated: "Summers fails to provide information that would enable the Court to evaluate Defendants' process and conduct for selecting the investments that he did. Providing the Court with data from other investments that outperformed the Fluor investments does little to aid the Court in evaluating the fiduciary process." 2023 WL 320000, at *6.

[5] Plaintiffs cite to *Zimmerman v. Cedars-Sinai Medical Center, et al.*, 2024 WL 1135773 (C.D. Ca. Feb. 18, 2024), in support of their argument regarding excessive fees. However, *Zimmerman* is distinguishable from the present case because, unlike the plaintiff in *Zimmerman*, the Plaintiffs have not alleged anything regarding share class cost, return lags, or flawed monitoring processes.

Accordingly, the Plaintiffs' allegations regarding the JPMorgan TDFs' performance and costs do not – separately or together – sufficiently state a claim for imprudence, especially where the Plaintiffs have neither alleged a meaningful benchmark for comparison nor alleged any flaw in the Defendant's process for selecting or maintaining those funds in the Plan's investment lineup.

## II. As a Matter of Law, it is Not Imprudent to Apply Forfeited Monies Towards Defendant's Non-Elective Matching Contribution

As detailed in Defendant's Motion, Plaintiffs have failed to sufficiently assert that Defendant breached the fiduciary duty of prudence or loyalty by its use of forfeited funds. Plaintiffs state that the AC "is materially similar to the upheld complaints in *Buescher* [*v. N. Am. Lighting, Inc.*, 2025 WL 1927503 (C.D. Ill. June 30, 2025)], *McManus II* [*v. Clorox Co.*, 2024 WL 732087 (N.D. Cal. Mar. 3, 2025)], *Perez Cruet* [*v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024)], *Parker* [*v. Tenneco Inc.*, 2025 WL 1173011 (E.D Mich. Apr. 22, 2025)], *Stewart* [*v. Nextera Energy, Inc.*, No. 23-cv-81314 (S.D. Fla. Aug. 14, 2025)], [and] *Rodriguez* [*v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D.Cal. 2024)]." Opp. at 31. This assertion, however, is untrue.[6]

In *Parker*, the plaintiffs claimed that the defendants breached their ERISA fiduciary duties when the plan fiduciaries used the forfeited funds to reduce contributions *rather than* reduce administrative expenses. Additionally, the second amended complaint in *Parker* asserted a clear conflict of interest where the plan fiduciaries were also company employees directly benefiting from their own decisions. However, here, no such allegations are included in the AC. In *Stewart*, the plan documents created a clear hierarchy requiring that forfeited funds first be used to restore previously forfeited amounts, second to reduce administrative expenses, and third, "if any left," to

[6] The AC highlights one of the distinctions between the cases cited in the Opp. and the facts of the instant matter. The chart provided in the AC shows that the Defendant at times contributed the Plan's forfeited funds towards *both* non-discretionary matching contributions and administration costs. *See* AC ¶ 145. In the cases Plaintiffs cited in Plaintiffs' Opp., however, there was no distribution at all towards the administrative costs.

reduce company contributions. Here, no such hierarchy is alleged in the AC. Lastly, the *Rodriguez* case is irrelevant as the court held that the complaint plausibly alleged that the plan itself did not authorize the employer's decisions on the use of the forfeited funds. The other cases Plaintiffs cited, *Buescher*, *McManus*, and *Perez Cruet*, are similarly distinguishable.

Plaintiffs argue that the *Hutchins II* decision should not influence this Court's decision on the instant motion because in *Hutchins II* "there was effectively no fiduciary discretion allowed to offset plan expenses" and there were settlor-imposed limitations. However, the decision in *Hutchins II*, specifically that the existence of a potential conflict does not "automatically amount[] to a breach," has consistently been applied in cases just like the instant matter. Indeed, very recent cases have rejected arguments like those made by the Plaintiffs here.

For example, in *Dimou v. Thermo Fisher Scientific Inc.*, 2025 WL 2611240 (S.D. Ca. Sept. 9, 2025), the district court dismissed the plaintiff's imprudence claim relating to forfeited funds where the plaintiff's complaint included allegations that the defendants "'utilized an imprudent and flawed process' and 'failed to undertake any reasoned and impartial decision-making process to" identify what "'was in the best interest of the Plan's participants or was prudent, and [defendants] failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.'" *Id.* at *6. The court held that such allegations – nearly identical to those in the current AC – "boil[ed] down to alleging that Thermo Fisher necessarily committed misconduct in its fiduciary capacity by not using forfeitures in Plaintiff's preferred manner." *Id.* at *7. Further, the complaint in *Dimou*, like the AC in the instant matter, alleged that the defendants "failed to properly investigate the best way to use the forfeitures." *Id.* The court held that "in essence, [plaintiff's] claim is still that 'forfeitures must always be used to pay Plan participants' administrative expenses before they can be applied to reducing the

company's matching contributions.'" *Id.* (citing *Hutchins II*). This, the court continued, does "not invite a plausible inference of wrongdoing…. Absent allegations that participants were deprived of benefits to which they were entitled under the Plan, Plaintiff 'fails to plausibly allege that a 'proper' investigation would have led to a different outcome.'" *Id.* (*citing Hutchins II*).

In an even more recent decision, *Ariel Armenta v. WillScot Mobile Mini Holdings Corp., et al.*, 2025 WL 2645518 (D. Az. Sept. 15, 2025), the plaintiff alleged that there was a breach of the duties of loyalty and prudence where the defendant, WillScot, allegedly "'fail[ed] to use [forfeitures] to defray the reasonable costs of administering the Plan or allocating them back to the accounts of eligible Plan participants.'" *Id.* at *4. The plaintiff further alleged "that WillScot violated its duty of prudence by 'improperly exercising discretion and control' over the forfeitures by using an 'imprudent and flawed process' because WillScot 'failed to undertake any reasoned and impartial decision-making process' for reallocating the forfeitures to reduce 'WillScot's own contribution expenses' instead of paying for administrative expenses." *Id.* at *5. The court dismissed the plaintiff's forfeiture claims, stating that plaintiff "only provide[d] a general statement that WillScot violated the duty of prudence. She [did] not provide any specific facts about WillScot's alleged flawed processes when making decisions to reallocate forfeitures." *Id.* In dismissing the claims, and relying on the reasoning in *Hutchins II*, the court determined it was "undisputed that the forfeitures ultimately benefited plan participants because they were used to pay WillScot's contributions directly to plan participants and to offset some administrative expenses." *Id.* The same is true in the instant case and, thus, the same dismissal of Plaintiffs' claims should follow.

Plaintiffs point to *Bussian* as Fifth Circuit precedent for the proposition that although here Defendant's conduct was consistent with provisions of the Plan, Defendant failed to act in the sole

interest of the participants and therefore breached its fiduciary duties. Opp. at 28-29. This argument was also made in the recent case of *Megan Estay et al. v. Ochsner Clinic Foundation et al.*, 2025 WL 2644782 (E.D. La. Sept. 15, 2025), and was rejected – as should be done here. In *Megan Estay*, the court explained that in *Bussian* the fiduciary's decisions resulted in "reducing the benefits available to participants, and many participants did not receive their full benefits. This fact makes *Bussian* easily distinguishable from the facts at issue here and in alliance with the courts dismissing these types of claims." *Id.* at *4. In the current AC, the Plaintiffs do not allege that they did not receive their full benefits. As such, the holding in *Bussian* "does not support Plaintiffs' contention that Defendants' use of the Forfeitures for employer matching contributions in compliance with ERISA and the terms of the Plan is a breach of loyalty." *Id.*

As the Motion explained, the AC contains only broad allegations that Defendant's permissible and commonly accepted use of forfeited funds to contribute to the Company's non-elective contributions constitutes a breach of the fiduciary duties of loyalty and prudence. Such allegations are insufficient to withstand the Motion and, as such, Plaintiffs' forfeiture claims should be dismissed.

**III. Plaintiffs' Claims are Either Untimely or May Be Untimely**

As explained in the Motion, any allegations pertaining to conduct which occurred prior to May 20, 2019 – six years prior to the filing of the instant complaint – should be disregarded. Plaintiffs concede that the Class Period identified in the AC, which goes back to October 28, 2018, is improper based on the six-year limitations period. *Opp.* at 28, n.8. Thus, any claims prior to May 20, 2019 (six years prior to the filing of the original complaint), should not be considered and should be dismissed as untimely. ERISA also has a three-year limitations period which begins to run when the plaintiff has "actual knowledge" of the alleged breach or violation of the statute. 29 U.S.C. §1113(2). As acknowledged in the AC, the JPMorgan TDFs at issue were eliminated from

the plan's investment lineup in November 2021. Accordingly, the Plaintiffs received notice of the JPMorgan TDFs' final performance and costs as an investment option for the Plan more than three years before they filed the original complaint.

The Supreme Court in *Intel v. Sulyma* stated that "the word 'actual' [in the "actual knowledge standard"] meant what it means today: 'existing in fact or reality.'" 589 U.S. 178, 184. Plaintiffs here cannot claim they did not have "actual knowledge" because what existed "in fact or reality" is that the JPMorgan TDF investment options were eliminated from the Plan's investment lineup in their entirety and replaced by the BlackRock LifePath Index funds. Therefore, Plaintiffs' claims related to those JPMorgan TDFs may all be barred by the 3-year statute of limitations.

## IV. Discovery Should be Stayed or, in the Alternative, Bifurcated

Plaintiffs do not oppose Defendant's request for a total stay of discovery pending a decision on the instant motion (Opp. at 34). However, Plaintiffs oppose Defendant's alternative request for bifurcated statute of limitations discovery. As detailed in the Motion, bifurcated discovery may fully resolve the merits of the case. Thus, in the event the Court declines to stay discovery in its entirety, it would be consistent with the interests of judicial economy and efficiency for the Court to permit discovery to proceed solely on the statute of limitations issue.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant the Motion in its entirety and without leave to further amend. Defendant further respectfully requests that the Court exercise its discretion and stay discovery pending the outcome of the Motion or, in the alternative, bifurcate discovery to permit Defendant to fully develop its statute of limitations defenses prior to engaging in full merits discovery.

Dated: September 29, 2025

**MCKOOL SMITH PC**

/s/ Robert Manley
Robert Manley, Esq.
Texas Bar No. 00787955
300 Crescent Ct #1500
Dallas, Texas 75201
rmanley@McKoolSmith.com
Telephone: (214) 978-4226

**FOX ROTHSCHILD LLP**

/s/ Brian S. Cousin
Brian S. Cousin, Esq. (*admitted pro hac vice*)
New York Bar No. 2259182
Jose M. Jara, Esq. (*admitted pro hac vice)*
New Jersey Bar No. 043482015
Casey Katz Pearlman, Esq. (*admitted pro hac vice)*
New York Bar No. 5838453
101 Park Avenue 17th Floor
New York, NY 10178
Telephone: (212) 878-7900
bcousin@foxrothschild.com
jjara@foxrothschild.com
cpearlman@foxrothschild.com
-and-
Erin Garza Kessinger
Texas Bar No. 24105990
Saint Ann Court
2501 N Harwood Street, Ste. 1800
Dallas, Texas 75201
Telephone: (972) 991-0889
ekessinger@foxrothschild.com

**ATTORNEYS FOR DEFENDANT COCA-COLA SOUTHWEST BEVERAGES LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on all counsel of record by ECF in accordance with the Federal Rules of Civil Procedure on September 29, 2025.

*/s/ Brian S. Cousin*

Brian S. Cousin, Esq.