UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONICA DEL BOSQUE, JENNA RODRIGUEZ, FABIOLA SOLISGARAY, NICOLE WARE, and PHILIP WATTERSON, individually and on behalf of all others similarly situated, | § § § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:25-cv-01270-X |
| v. | § § | |
| COCA-COLA SOUTHWEST BEVERAGES LLC, | § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Coca-Cola Southwest Beverages LLC's ("Coca-Cola") motion to dismiss. (Doc. 24). The plaintiffs bring claims for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), arising from Coca-Cola's management of its 401(k) plan. The plaintiffs' prudence claim must be dismissed because their comparator funds are managed differently from the funds at issue. Likewise, plaintiffs' breach of loyalty claim fails because neither ERISA nor Coca-Cola's 401(k) plan entitles them to the benefit of forfeited funds from other employees' accounts.

Accordingly, the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** the complaint.  Plaintiffs are granted leave to amend their complaint within twenty-eight days of the issuance this Order.

## I.     Factual Background

This is a putative class action lawsuit brought by Monica del Bosque, Jenna Rodriguez, Fabiola Solis-Garay, Nicole Ware, and Philip Watterson against their former employer, Coca-Cola, for alleged breach of fiduciary duties under ERISA.

Coca-Cola's 401(k) plan (the Plan) gives each participant an individual account that includes the amount contributed to those accounts and any income, expenses, gains and losses, and forfeitures allocated to the participants' accounts.  Participants can contribute up to 50% of their salary and they are 100% vested in their voluntary contributions.  Coca-Cola makes matching contributions each payroll period up to 100% of the participants' first 3% of their contributions, plus 50% of the next 6% of their salary deferral contributions.  This results in up to a maximum of 9% of their salary.

Participants become 100% vested in these safe harbor matching contributions and nonelective contributions when they complete two years of service at the company, or when they reach the age of 65, are permanently disabled, or die.  If the employer contributed part of a participant's account is not vested when they leave the company, it is considered a forfeiture.  According to the Plan, these forfeitures can be used to (1) restore Plan participants' accounts, (2) offset Plan expenses, or

(3) reduce nonelective contributions.  As of December 2023, the Plan had 11,150 participants and $543,218,631 in assets.

The Plan included several funds for investment each year.  One investment option during the class period was the JPMorgan target date funds (TDFs).  Target dates are the plan participant's anticipated retirement year.

Until November 2021, these were the only target date investment options in the Plan.  The rebalancing of the fund's portfolio over time occurred according to a "glide path."  A "glide path" determines how a fund's target asset allocations are expected to change over time and how they become more conservative as the target retirement date approaches.

The JPMorgan TDFs were a "through" fund.  "Through" funds follow their glidepath through so that its most conservative point is reached after the retirement date.  Additionally, it had both active and passive management because it was a mixed-management fund.

Plaintiffs believed that the JPMorgan TDFs had been underperforming and sued, alleging Coca-Cola breached its fiduciary duty of prudence and loyalty in managing the Plan.

## II.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[1]  To survive a motion to dismiss, the plaintiff

---

[1] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020) (per curiam).

must allege enough facts "to state a claim to relief that is plausible on its face."[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[4] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[5]

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and accept all facts pleaded in the complaint as true.[6]  That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[7]

### III.    Analysis

### A.  Breach of Fiduciary Duty of Prudence

Coca-Cola first argues that plaintiffs failed to adequately plead a breach of the fiduciary duty of prudence.  As far as the Court can determine from the complaint, the plaintiffs advance two theories of imprudence: (1) that the selection and continued

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[5] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

[6] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[7] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023).

use of the JPMorgan TDFs was imprudent due to their alleged mediocre performance when compared to their selected comparators and (2) that the fees associated with the JPMorgan TDFs were too high when compared to the alternatives. The Court takes each in turn.

The primary purpose of ERISA is to protect beneficiaries of employee retirement plans.[8] One of the ways in which it accomplishes this purpose is by imposing the fiduciary duty of prudence. The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[9] "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."[10] Thus, "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."[11]

> The prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results. But when the alleged facts do not directly address the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.[12]

---

[8] *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987).

[9] 29 U.S.C. § 1104(a)(1)(B); *Schweitzer v. Inv. Comm. of Phillips 66 Savs. Plan*, 960 F.3d 190, 196 (5th Cir. 2020), *cert. denied* 142 S. Ct. 706 (2021).

[10] *Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022) (cleaned up).

[11] *Id.* (cleaned up).

[12] *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) (O'Connor, J.) (cleaned up).

5

Accordingly, to state a claim for breach of the duty of prudence, plaintiffs may "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative."[13]

That said, "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."[14] Where, as here, plaintiffs do not allege specific facts surrounding the selection and maintenance process, courts—such as this one—have required plaintiffs to "provide a sound basis for comparison—a meaningful benchmark."[15]

When determining a meaningful benchmark, courts distinguish between actively and passively managed accounts and investment strategies.[16] Here, plaintiffs identify four comparator funds that are "through" funds with similar investment strategies as the JPMorgan TDF accounts. But the complaint also states that the JPMorgan TDF accounts are a blend of passive and active management while its comparators are all actively managed. Because the accounts are managed differently, the Court concludes that the alleged comparators are not meaningful benchmarks. So plaintiffs fail to sufficiently allege Coca-Cola breached its duty of prudence based on selecting and continuing to use the JPMorgan TDFs.

---

[13] *Id.* (cleaned up).

[14] *Hughes*, 595 U.S. at 177.

[15] *Locasio v. Fluor Corp.*, No. 3:22-CV-0154-X, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (Starr, J.) (cleaned up).

[16] *Id.*

The second theory of imprudence fares no better. Plaintiffs do not allege any imprudent processes in choosing these fees. As in underperformance claims, it is not sufficient to simply allege that cheaper options existed.[17] "Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."[18]

Accordingly, plaintiffs were required to sufficiently plead imprudent processes in Coca-Cola's decision. Because they did not, the Court must dismiss Plaintiffs' imprudence claim.

## B. Breach of Fiduciary Duty of Loyalty

Coca-Cola next argues that plaintiffs' breach of the duty of loyalty claim should be dismissed due to insufficient allegations. Plaintiffs' theory of disloyalty is that Coca-Cola's use of forfeited funds in place of its contributions was done for the sole benefit of Coca-Cola and not the beneficiaries. The Plan permitted this, but plaintiffs claim it was against their financial interest.

Fiduciaries have a "stringent duty of loyalty" under ERISA.[19] Under ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

---

[17] *See, e.g.*, *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022) (holding that plaintiffs cannot simply allege that "Defendants failed to consider . . . less expensive alternatives to the Plan's investment options"); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016) (holding a complaint of excessive fees was insufficient because "the complaint allege[d] no facts that are suggestive of imprudent action.").

[18] *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), *abrogated on other grounds by Hughes*, 595 U.S. at 170.

[19] *Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018).

of administering the plan[.]"[20]  Moreover, fiduciaries are bound by the terms of a plan "insofar as such documents and instruments are consistent with the provisions" of ERISA.[21]

The Fifth Circuit has yet to address this issue.  But our sister court in the Eastern District of Louisiana addressed an identical situation in *Estay et al v. Ochsner Clinic Foundation et al*.[22]  Like the present case, the fiduciary used forfeited funds to reduce its matching contribution instead of using the forfeitures to defray administrative costs.[23]  That court held the defendant had not violated the duty of loyalty for three reasons:

> (1) ERISA does not require the fiduciary to maximize profits, only to ensure that participants receive their promised benefits; (2) both ERISA and the terms of the plans themselves authorize the use of forfeiture funds for employer contribution matching; and (3) the plaintiffs' theory would effectively require forfeiture funds to be used for administrative expenses and would create an additional benefit to participants not contemplated in their plans.[24]

The Court finds this reasoning persuasive and joins the majority of courts who have found likewise on this issue.[25]

---

[20] 29 U.S.C. § 1104(a)(1).

[21] 29 U.S.C. § 1104(a)(1)(D).

[22] No.  25-507, 2025 WL 2644782 (E.D. La. Sept. 15, 2025).

[23] *Id*.

[24] *Id*. at *3.

[25] *See Ariel Armenta v. WillScot Mobile Mini Holdings Corp.*, No. CV-25-00407-PHX-MTL, 2025 WL 2645518, at *5 (D. Az. Sept. 15, 2025); *Barragan v. Honeywell Intern.*, 2025 WL 2383652 (D.N.J. Aug. 18, 2025); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024); *Estay*, No. 25-507, 2025 WL 2644782, at *3 (finding it permissible to contribute all forfeited funds to reduce contributions instead of administrative expenses when both were permitted by the plan); *Dimou v. Thermo Fisher Scientific Inc.*, No. 23-cv-1732-BJC-JLB, 2025 WL 2611240 (S.D. Cal. Sept. 9, 2025).

Plaintiffs argue that this conclusion is foreclosed by the Fifth Circuit's holding in *Bussian v. RJR Nabisco*.[26]  In *Bussian*, the Fifth Circuit stated that "ERISA's duty of loyalty is the highest known to the law" and that "trustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan."[27]

But, as *Estay* noted, the *Bussian* plaintiffs were denied their promised benefits and courts have made clear that plan fiduciaries have a duty to ensure that participants receive their promised benefits.[28]  Moreover, ERISA does not "create an exclusive duty to *maximize* pecuniary benefits."[29]  Plaintiffs here do not allege that they did not receive their benefits—they simply allege that Coca-Cola shouldn't have used the forfeited funds to provide those benefits.  That theory creates an additional benefit not contemplated by ERISA and the Plan and so cannot sustain a breach of loyalty claim.

Plaintiffs also allege that Coca-Cola breached its duty of loyalty because the structure of the Plan created a conflict of interest.  But plaintiffs cite no caselaw establishing that the existence of a possible conflict of interest automatically amounts to a breach of ERISA's duty of loyalty.[30]  Nor do plaintiffs allege facts showing disloyal use of its discretion.  It is undisputed that Coca-Cola used the forfeitures to the

---

[26] 223 F.3d 286 (5th Cir. 2000).

[27] *Bussian v. RJR Nabisco, Inc.*, 223 F.3d at 294, 296 (cleaned up).

[28] *Estay*, 2025 WL 2644782 at *4.

[29] *Id*. (cleaned up).

[30] *See Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. Feb. 5, 2025).

ultimate benefit of the plaintiffs because they were used to pay its contributions directly to plan participants.[31]  And, as other courts have held, that forecloses a violation of the duty of loyalty absent specific allegations.[32]

In short, ERISA's goal is to "ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits."[33]  That goal was met here.  ERISA and the Plan do not guarantee Plaintiffs the additional benefits they were never promised but nonetheless seek.  Accordingly, the Court dismisses the plaintiffs' breach of loyalty claim.

### C. Conclusion

The Court **GRANTS** Coca-Cola's motion to dismiss.[34]  The Court **DISMISSES WITHOUT PREJUDICE** plaintiffs' complaint.  The Court **GRANTS** plaintiffs leave to amend their complaint within twenty-eight days of this order's issuance.  The changes to the complaint are limited to those needed to cure the deficiencies this order identifies.

**IT IS SO ORDERED** this 13th day of November, 2025.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[31] *Ariel*, No. CV-25-00407-PHX-MTL, 2025 WL 2645518, at *5.

[32] *See id.* (finding it permissible to contribute most forfeited funds to reduce contributions and some to administrative expenses when both were permitted by the plan).  *See also Hutchins*, 737 F. Supp. 3d at 863; *Estay*, No. 25-507, 2025 WL 2644782, at *3 (finding it permissible to contribute all forfeited funds to reduce contributions instead of administrative expenses when both were permitted by the plan); *Dimou*, No. 23-cv-1732-BJC-JLB, 2025 WL 2611240 at *6–7.

[33] *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

[34] Coca-Cola also argues that plaintiffs' claims may be time barred.  But assuming all alleged facts in favor of plaintiffs, the Court cannot say that the claims are time-barred at this stage.  As both sides seem to recognize, determining actual knowledge is challenging and requires a complicated factual analysis.  The Court declines to rule on this basis.