**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| MONICA DEL BOSQUE, JENNA RODRIGUEZ, FABIOLA SOLIS-GARAY, NICOLE WARE, and PHILIP WATTERSON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | **CIVIL ACTION NO.**: 3:25-cv-01270-X |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| COCA-COLA SOUTHWEST BEVERAGES LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    FACTS ................................................................................................................2

III.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED ENTIRELY ..............5

      A.     Standard of Review................................................................................5

      B.     The Comparisons are Plausible Meaningful ............................................7

      C.     Defendant's Imprudent Processes..........................................................15

      D.     Underperformance was Consistent and Subpar.......................................21

      E.     The Court Already Rejected Defendant's Statute of Limitations
           Arguments...........................................................................................23

IV.   CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AAR, Inc. v. Nunez*,
408 F. App'x 828 (5th Cir. 2011) ......................................................................................8

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ...........................................................................................21

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015, 1025 (9th Cir. 2025)
*cert. granted sub nom.*,
2026 WL 120679 (U.S. Jan. 16, 2026); ...............................................................1, 8, 20

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009).................................................................................................. 12

*Baker v. 7-Eleven Inc.,*
No. 3:25-cv-01609-x (N.D. Tex.  Feb. 19, 2026) ............................................................1

*Baumeister v. Exelon Corp.*,
No. 21-cv-6505, 2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) ......................................23

*Beldock v. Microsoft Corp.*,
No. 22-cv-1082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023)...........................15, 19

*Bell v. Pension Committee of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. Mar. 23, 2017)................................................................. 12

*Binder v. PPL Corp.*,
No. 22-cv-00133, 2024 WL 1096819 (E.D. Pa. Mar. 12, 2024)....................................22

*In re Biogen, Inc. ERISA Litig.*,
No. 20-cv-11325, 2021 WL 3116331 (D. Mass. July 22, 2021).....................................18

*Blackmon v. Zachary Holdings, Inc.*,
No. 20-cv-988, 2021 WL 2190907 (W.D. Tex. Apr. 22, 2021 ....................................5, 7

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009).........................................................................................8, 21

*Brookins v. Ne. Univ.*,
No. 22-cv-11053, 2024 WL 1659507 (D. Mass. Apr. 17, 2024)....................................10

*Brotherston v. Putnam Invs., LLC,*
907 F.3d 17, 32 1st Cir. 2018)........................................................................................9

*Bussian v. RJR Nabisco Inc.,*
223 F.3d 286 (5th Cir. 2000) ...............................................................................5, 6, 16

*Caputo v. Pfizer, Inc.,*
267 F.3d 181 (2d Cir. 2001) .........................................................................................25

*Carter v. Sentara Healthcare Fiduciary Comm.,*
No. 25-cv-16, 2025 WL 2427614 (E.D. Va. Aug. 11, 2025).....................................7, 19

*Coppel v. SeaWorld Parks & Ent., Inc.,*
No. 21-cv-01430, 2023 WL 2942462 (S.D. Cal. Mar. 22, 2023) ....................................8

*Cunningham v. Cornell Univ.,*
604 U.S. 693 (2025)..................................................................................6, 14, 19, 21

*Daggett v. Waters Corp.,*
731 F. Supp. 3d 121 (D. Mass. 2024) ...............................................................10, 11, 18

*Davis v. Stadion Money Mgmt., LLC,*
No. 19-cv-556, 2020 WL 1248580 (D. Neb. Mar. 16, 2020).......................................24

*Davis v. Washington Univ. in St. Louis,*
960 F.3d 478 (8th Cir. 2020).....................................................................................10, 12

*Del Bosque v. Coca-Cola Sw. Beverages LLC,*
No. 25-cv-01270, 2025 WL 3171326 (N.D. Tex. Nov. 13, 2025) ......................1, 10, 23

*Disselkamp v. Norton Healthcare*, Inc.,
No. 18-cv-00048, 2019 WL 3536038 (W.D. Ky. Aug. 2, 2019).....................................17

*Doll v. Evergy, Inc.,*
No. 25-cv-00043, 2025 WL 4042583 (W.D. Mo. Sept. 10, 2025)..................................13

*Dover v. Yanfeng US Auto. Interior Sys. I LLC,*
563 F. Supp. 3d 678 (E.D. Mich. 2021)............................................................................9

*Falberg v. Goldman Sachs Grp., Inc.,*
No. 19-cv-9910, 2020 WL 3893285 (S.D.N.Y. July 9, 2020) .................................22, 24

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014).......................................................................................................6

*Fulton v. FCA US LLC,*
No. 24-cv-13159, 2025 WL 2800003 (E.D. Mich. Sept. 30, 2025)...................................9, 17, 22

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. 2023) ...............................................................................11

*Garcia v. Alticor, Inc*.,
No. 20-cv-1078, 2021 WL 5537520 (W.D. Mich. Aug. 9, 2021) ....................................18

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
629 F. Supp. 3d 352 (M.D.N.C. 2022)..............................................................................14

*Hall v. Cap. One Fin. Corp*.,
No., 22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)................................12, 20

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ...............................................................................................6

*Hughes v. Nw. Univ*.,
595 U.S. 170 (2022)..................................................................................................*Passim*

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020)...........................................................................................................24

*Johnson v. Parker Hannifin Corp*.,
122 F.4th 205 (6th Cir. 2024)...................................................................................*Passim*

*Jones v. Mem'l Hermann Health Sys.*,
No. 24-cv-2105, 2025 WL 2698700 (S.D. Tex. Aug. 6, 2025)...................................7, 19

*JSW Steel (USA) Inc. v. Nucor Corp*.,
586 F. Supp. 3d 585 (S. D. Tex. 2022)................................................................................6

*Karpik v. Huntington Bancshares Inc*.,
No. 17-cv-1153, 2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) ...........................8, 9, 13

*Kistler v. Stanley Black & Decker, Inc*.,
No. 22-cv-966, 2024 WL 3292543 (D. Conn. July 3, 2024) ........................9, 17, 18, 21

*Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*,
No. 20-cv-9194, 2022 WL 17224708 (C.D. Cal. Sept. 27, 2022) ...................................12

*Kohari v. MetLife Grp., Inc.*,
No. 21-CV- 6146, 2022 WL 3029328 (S.D.N.Y. Aug. 1, 2022)......................................24

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ....................................18

*Laliberte v. Quanta Servs., Inc.*,
No. 22-cv-03290, 2023 WL 12047212 (S.D. Tex. Sept. 29, 2023) ..................................7

*Locascio v. Fluor Corp.*,
No. 22-cv-0154, 2023 WL 320000 (N.D. Tex. Jan. 18, 2023)......................................5, 7

*Macias v. Sisters of Charity of Leavenworth Health Sys.,*
No. 23-cv-01496, 2025 WL 4038011 (D. Colo. July 24, 2025) ....................9, 11, 16, 22

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ...............................................................................7, 8, 10

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022).................................................................................7, 11, 13

*Mattson v. Milliman, Inc.*,
No. 22-cv-37, 2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) ..................................11

*Mazza v. Pactiv Evergreen Servs. Inc.*,
No. 22-cv-5052, 2023 WL 3558156 (N.D. Ill. May 18, 2023).......................................17

*McNeilly v. Spectrum Health Sys.*,
No. 20-cv-870, 2022 WL 22996675 (W.D. Mich. Dec. 20, 2022) .................................20

*In re MedStar ERISA Litig.*,
No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) .............................................17

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018).......................................................................12, 13, 15, 23

*Miller v. AutoZone, Inc.*,
No. 19-cv-02779, 2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ..............................22

*Moler v. Univ. of Maryland Med. Sys.*,
No. 21-cv-1824, 2022 WL 2756290 (D. Md. July 13, 2022) .........................................10

*In re Omnicom ERISA Litig.*,
No. 20-cv-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) .......................................22

*Parmer v. Land O'Lakes, Inc.*,
518 F. Supp. 3d 1293 (D. Minn. 2021) .........................................................................10

v

*Payne v. Hormel Foods Corp.*,
No. 24-cv-545, 2024 WL 4228613 (D. Minn. Sept. 18, 2024) ......................................................22

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ("*St. Vincent*") ...............................................................12, 21

*Perkins v. United Surgical Partners Int'l, Inc.*,
No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) .............................................*Passim*

*Quest Diagnostics Inc. ERISA Litig.*,
2021 WL 1783274 (D.N.J. May 4, 2021) .....................................................................22

*In re 2014 Radioshack ERISA Litig.*,
165 F. Supp. 3d 492 (N.D. Tex. 2016) ........................................................................25

*Ramos v. Taylor,*
646 F. Supp. 3d 807 (W.D. Tex. 2022) ........................................................................14

*Russell v. Illinois Tool Works, Inc.*,
No. 22-cv-2492, 2024 WL 2892837 (N.D. Ill. June 10, 2024) .............................................11, 22

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ....................................................................................6

*Schissler v. Janus Henderson US (Holdings) Inc.*,
No. 22-cv-02326, 2023 WL 6902050 (D. Colo. Sept. 7, 2023) ..............................................8, 16

*Seibert v. Nokia of Am. Corp.*,
No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024) ...................................................11

*Seidner v. Kimberly-Clark Corp.,*
No. 21-cv-867, 2023 WL 2728714 (N.D. Tex. Mar. 30, 2023) ..............................................6, 7

*Sellers v. Trustees of Coll.*,
647 F. Supp. 3d 14 (D. Mass. 2022) .......................................................................19, 22

*Smith v. CommonSpirit,*
37 F.4th 1160 (6th Cir. 2022) .............................................................................10, 20

*Spence v. Am. Airlines, Inc.*,
718 F. Supp. 3d 612 (N.D. Tex. 2024) ........................................................................7

*Stokes v. Gann*,
498 F.3d 483 (5th Cir. 2020) ................................................................................5

*Su v. Johnson*,
68 F.4th 345 (7th Cir. 2023).................................................................................................24

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019) .................................................................................................6

*Tatum v. RJR Pension Inv. Comm.*,
761 F. 3d 346 (4th Cir. 2014)...............................................................................................5

*Terraza v. Safeway Inc.*,
241 F. Supp. 3d 1057 (N.D. Cal. 2017) .............................................................................10

*Thomson v. Caesars Holdings Inc.*,
661 F. Supp. 3d 1043 (D. Nev. 2023) ...........................................................................13, 22

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015).....................................................................................................*Passim*

*Trauernicht v. Genworth Fin. Inc.*,
No. 22-cv-532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023)....................................9, 12, 14, 20

*Troudt v. Oracle Corp.*,
No. 116-cv-00175, 2017 WL 663060 (D. Colo. Feb. 16, 2017)........................................22

*Tullgren v. Booz Allen Hamilton Inc.*,
No. 22-cv-00856 (E.D. Va. 2023)......................................................................................20

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996)............................................................................................15, 17

*Vellali v. Yale Univ.*,
308 F. Supp. 3d 673 (D. Conn. 2018) ................................................................................24

*Walter v. Kerry Inc*,
No. 21-cv-0539, 2022 WL 1720095 (E.D. Wis. May 27, 2022).....................................17, 21

*White v. Chevron*,
2017 WL 2352137 (N.D. Cal. May 31, 2017),
*aff'd.*, 7
52 Fed. Appx. 453 (9th Cir. 2018) .....................................................................................20

## Other Sources

Employee Retirement Income Security Act of 1974 ("ERISA") ..........................................*Passim*

Plaintiffs, on behalf of the Coca-Cola Southwest Beverages 401(k) Plan (the "Plan"), oppose Defendant's Motion To (1) Dismiss Plaintiffs' Second Amended Complaint And (2) Stay Discovery Pending Determination of The Motion To Dismiss, Dkt. 36.

## I.    INTRODUCTION

As this Court previously recognized, "[t]he primary purpose of ERISA is to protect beneficiaries of employee retirement plans. One of the ways in which it accomplishes this purpose is by imposing the fiduciary duty of prudence." *Del Bosque v. Coca-Cola Sw. Beverages LLC*, No. 25-cv-01270, 2025 WL 3171326, at *2 (N.D. Tex. Nov. 13, 2025) (Starr, J.). Defendant breached its fiduciary duty of prudence by continuously failing to conduct prudent investigations into the Plan's JPMorgan SmartRetirement Target Date Funds ("JPM TDFs") and the prevailing marketplace. *See* Second Amended Complaint, Dkt. 33 ("SAC"). Hence, Plaintiffs' theory is <u>not</u> merely that the JPM TDFs underperformed. Plaintiffs surpass ERISA's pleading threshold with detailed allegations of information that was knowable to Defendant throughout its stewardship.[1]

Indeed, it is undisputed that the JPM TDFs underperformed against the benchmark designated by the JPM TDFs' own investment manager and Plaintiffs' other benchmarks. Rather, Defendant ignores key allegations to raise arguments courts regularly rebuke. Defendant's arguments that the SAC's comparisons are not apt are wrong because: (1) the SAC and Appendix A provide exactly what Defendant claims is missing; (2) the sufficiently similar alternative funds

---

[1] Although this Court has previously noted that "courts – such as this one – have required plaintiffs to 'provide a sound basis for comparison – a meaningful benchmark," 2025 WL 3171326, at *4, it is noteworthy that the Supreme Court is poised to decide whether "[t]he extratextual 'meaningful benchmark' requirement adopted by the Ninth Circuit [but not other courts] undercuts ERISA's role in protecting participants and beneficiaries…" *Anderson et al v. Intel Corp.*, Petition for a Writ of Certiorari, at 18 (Oct. 20, 2025)(attached as Ex A.). The Supreme Court granted the petition and hearing is set for the Fall 2026 term.  This Court recently ruled that textualism should be applied in ERISA matters.  *See Baker v. 7-Eleven Inc.,* No. 3:25-cv-01609-x, at 9 (N.D. Tex.  Feb. 19, 2026) (Starr, J.) (stating in an ERISA matter that "[t]his Court prefers textualism to assumptions").

are accompanied by two meaningful market indexes to create a holistic view of imprudence; (3) the Fifth Circuit and many courts disagree with Defendant's improperly heightened standard; (4) any further factual determination of comparability is inappropriate at this stage, before expert testimony; and (6) Defendant ignores the specific circumstances of the Plan and, relatedly, the required context specific scrutiny of ERISA complaints. Defendant also defies Fifth Circuit precedent by insisting that Plaintiffs rule out Defendant's potential explanation for allowing the underperforming JPM TDFs to remain in the Plan. However, there can be no prudent explanation for such a decision or failures to act on knowable information. The Motion is meritless and should be denied in its entirety.

## II.    FACTS

At all times during the Class Period, the Plan had significant assets under management and an exceptionally large number of participants. SAC, ¶¶ 11-13, 53-54. The Plan's investment in the JPM TDFs grew from $204 million in 2018 to $234 million in 2020. *Id*., ¶ 99. Accordingly, the Plan had ample bargaining power to choose any available target date fund ("TDF") series for the Plan. *Id*. A fiduciary's duty to ensure that a prudent TDF is offered to plan participants is heightened when considering that, given the structure of TDFs, participants often invest all their retirement assets in a single TDF vintage that matches their retirement date. *Id*., ¶ 85. The JPM TDFs were Plan participants' only TDF option until November 17, 2021. *Id*., ¶ 100.

The specific methodologies used to select prudent investments are primarily data driven. *Id*., ¶ 68. Such data is provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on mutual funds, CITs, and other types of investments. *Id*. Indeed, Morningstar is used and trusted by virtually all financial professionals and fiduciaries. *Id*.

No two TDF series are identical, and the subtle differences between series are what makes them more or less prudent. *Id.*, ¶ 76. Morningstar, the most well respected and accepted financial industry resource created the Morningstar Lifetime Moderate Index Category as the index category for TDFs. *Id.*, ¶ 88. Methodologically, "[t]he underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions" and "other indicative facts." *Id.*, ¶ 89. Morningstar explains that it created categories "to help investors make meaningful comparisons between mutual funds. Morningstar found that the investment objective listed on a fund's prospectus often did not adequately explain how the fund was actually invested." *Id.*, ¶ 90.

The SAC includes six "Comparator Funds" that are grouped in the same Morningstar Category as the JPM TDFs. *Id.*, ¶ 93. Importantly, all six Comparator Funds and the JPM TDFs: (1) pursue the same investment objectives; (2) are actively managed; (3) invest in both U.S. and foreign securities; (4) invest primarily in equity (stock) and fixed income (bond) securities; (5) are managed by well-known investment advisers; (6) are available to all large retirement plans including the Plan; and (7) concentrate their holdings in the large blend risk/return category. *Id.*, ¶¶ 93, 96-97 (citing various sources). Plaintiffs provide Paragraph 94 and Appendix A (Dkt. 33-1), that breaks down the asset allocations of the JPM TDFs and Comparator Funds.

The SAC also includes two "Indexes:" (1) the Morningstar Lifetime Moderate Index ("Morningstar Index"), which is appropriate based on Morningstar's in-depth categorization process; and (2) the S&P target date index ("S&P Index") which is particularly important because it is the index designated for performance comparisons by JPMorgan, the JPM TDF's investment manager and is an industry-accepted benchmark to measure TDFs. *Id.*, ¶¶ 89, 115-16. JPMorgan did not designate the use of the available S&P "to" index, simply the S&P target date index.

3

Critically, these comparisons demonstrate what information Defendants should have uncovered, especially had they read the JPM TDF's prospectus. *Id*., ¶ 116 n.22.

Defendant had a continuing obligation to carefully monitor and scrutinize the performance of the JPM TDFs on an ongoing basis. *Id*., ¶ 101. The performance of the JPM TDFs lagged behind the performance of the applicable Comparator Funds and Indexes for years before the inception of the Class Period. This historical pattern of underperformance should have been recognized and acted upon during the Class Period, particularly given the Plan's ability to achieve better due to its size. *Id*., ¶¶ 99-103. The Comparator Funds represent just six out of possibly a hundred or more funds in the Morningstar Category that were knowable, better performers. *Id*., ¶ 105.

The SAC charts a comparison of the JPM TDFs' 3-and-5-year returns against the Comparator Funds and the Indexes, spanning from January 1, 2016 to December 31, 2020. *Id*., ¶¶ 102-13, 116-17. The JPM TDFs underperformed against the S&P Index in every instance, from before and during the Class Period, and by an average as high as 22.07%. *Id*., ¶¶ 116-17. The JPM TDFs also underperformed *every* Comparator Fund on a 3-and-5-year basis, with an average underperformance as high as 30.21%. *Id*., ¶¶ 104, 107. By the start of the Class Period, the JPM TDFs underperformed the Morningstar Index on average by 31.40% on a three-year basis and 7.12% on a five-year basis. *Id*., ¶ 110. Out of 28 comparisons to the Morningstar Index, the JPM TDFs outperformed just once, and by less than 1%. *Id*., ¶¶ 109, 111. The underperformance "has nothing to do with any differences in the purpose of the Series or any possible justifiable difference in investment strategy, it's simply evidence of a clearly flawed investment strategy." *Id*., ¶ 122.

Moreover, the JPM TDFs had some of the worst fund rankings in 2018 and 2020 in its Morningstar Category. *Id*., ¶ 114 (charging rankings as low as the 90th percentile). Hence, it is not just Plaintiffs' opinion that the JPM TDFs were imprudent, but that of industry experts. *See id*., ¶

4

88. Like the known underperformance, the ranking data was available to Defendant before and during the Class Period, in real time, and does not constitute any sort of hindsight analysis. *Id*., ¶ 114. By failing to monitor the JPM TDFs and marketplace as a prudent fiduciary would, Defendant needlessly deprived participants of meaningful returns. *Id*., ¶ 123.

## III.    DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED ENTIRELY

### A.    Standard of Review

At this stage, "Plaintiffs' Amended Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-cv-10375, 2024 WL 1574342, at *2 (5th Cir. Apr. 11, 2024) (citations omitted). The allegations are viewed "'in the light most favorable to the plaintiff.'" *Locascio v. Fluor Corp.*, No. 22-cv-0154, 2023 WL 320000, at *2 (N.D. Tex. Jan. 18, 2023) (Starr, J.) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020)). Courts reviewing ERISA complaints must "[]evaluate the allegations as a whole" using a "context specific" approach. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Perkins,* 2024 WL 1574342, at *2 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)).

In determining whether fiduciaries have breached their duty of prudence, [the court] ask[s] whether the individual trustees, at the time they engaged in the challenged [actions], employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Blackmon v. Zachary Holdings, Inc.*, No. 20-cv-988, 2021 WL 2190907, at *3 (W.D. Tex. Apr. 22, 2021 (quoting *Tatum v. RJR Pension Inv. Comm.*, 761 F. 3d 346, 356 (4th Cir. 2014)); *see also Bussian v. RJR Nabisco Inc.*, 223 F.3d 286, 299 (5th Cir. 2000). However, courts conduct this inquiry "after sufficient time for discovery" has occurred, *i.e.*, after the motion to dismiss stage.

*Id*., at *6 (quoting *Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019)). Indeed, the Supreme Court has a "heighten[ed] [] fairness concern" for ERISA plaintiffs at the pleadings stage, because the justification (or lack of) for a fiduciary's decision will "turn on facts one would expect to be in the fiduciary's possession." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 705 (2025); *see also Seidner v. Kimberly-Clark Corp.,* No. 21-cv-867, 2023 WL 2728714, at *5 (N.D. Tex. Mar. 30, 2023) (the "[f]ailure to allege facts that refer directly to the fiduciary's knowledge, processes, or investigation, however, is not fatal" because "ERISA plaintiffs generally lack the inside information and details regarding a fiduciary's internal decision-making process at the pleading stage."). *Cunningham* is one of many unanimous Supreme Court cases rejecting arguments that would heighten a pleading standard and limit liability for ERISA fiduciaries. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) ("we do not believe that the presumption [in favor of the fiduciaries that is proposed] here is an appropriate way to weed out meritless lawsuits."); *Tibble*, 575 U.S. 523; *Hughes*, 595 U.S. 170.

On remand from the Supreme Court, the Seventh Circuit in *Hughes* held that "the 'difficult tradeoffs' that an ERISA fiduciary faces, and the 'range of reasonable judgments' that may be made" are "alternative explanations [that] need not be conclusively ruled out at the pleadings stage." *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (quoting *Hughes*, 595 U.S. at 177). The Fifth Circuit has been steadfast in upholding this same principle. *See Perkins*, 2024 WL 1574342, at *3; *Bussian*, 223 F.3d at 295 (Actions that are not *per se* barred by ERISA may still constitute a fiduciary breach under particularized circumstances);[2] *see also Sacerdote v. New York Univ.*, 9 F.4th 95, 108 (2d Cir. 2021) ("Such an argument 'goes to the merits and is misplaced at

---

[2] Defendant cites *JSW Steel (USA) Inc. v. Nucor Corp.*, 586 F. Supp. 3d 585 (S. D. Tex. 2022) for the opposite conclusion, but that was an anti-trust, district court case which predates *Perkins*.

this early stage.'" Courts "do not require an ERISA plaintiff 'to rule out every possible lawful explanation for the conduct he challenges.'"); *Johnson v. Parker Hannifin Corp.*, 122 F.4th 205, 219 (6th Cir. 2024) (same). Undoubtedly, it is inherent in a plaintiffs' theory of breach that "if the [Defendant] had no process for monitoring the [investment], its decisions were not within a 'range of reasonable judgments'" a fiduciary makes. *Carter v. Sentara Healthcare Fiduciary Comm.*, No. 25-cv-16, 2025 WL 2427614, at *5 (E.D. Va. Aug. 11, 2025).

## B.    The Comparisons are Plausibly Meaningful

Foundationally, "[w]hat makes a[n] [investment] comparison meaningful […] will depend on context because 'the content of the duty of prudence' is necessarily 'context specific.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023) (quoting *Hughes*, 595 U.S. at 177). While Defendant mischaracterizes out-of-Circuit decisions to insist on some bright line rules for pleading a meaningful benchmark (even though the text of the ERISA statute doesn't require it), those cases actually held that "there is no one-size-fits-all approach" for meaningful benchmarks. *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022).[3] This Court has aptly explained that "[t]he Fifth Circuit has yet to define" what a meaningful benchmark is "exactly," but "clues that guide the definition exist in different courts." *Locascio*, 2023 WL 320000, at *6.

Defendant errs by ignoring important comparisons entirely, and by attempting to impose a level of comparator details no court has required. *See Johnson*, 122 F.4th at 218 (explaining that

---

[3] Although Plaintiffs provide meaningful benchmarks, it is notable that "requiring a benchmark for measuring performance is not required at this stage given the inherent fact questions such a comparison involves. And, importantly, the Fifth Circuit has not imposed a performance-benchmark requirement." *Spence v. Am. Airlines, Inc.*, 718 F. Supp. 3d 612, 619 (N.D. Tex. 2024); *see also Laliberte v. Quanta Servs., Inc.*, No. 22-cv-03290, 2023 WL 12047212, at *2 (S.D. Tex. Sept. 29, 2023) (same) *Blackmon*, 2021 WL 2190907, at *5 (same); *Jones v. Mem'l Hermann Health Sys.*, No. 24-cv-2105, 2025 WL 2698700, at *3 (S.D. Tex. Aug. 6, 2025) (same); *Seidner*, 2023 WL 2728714, at *6 (N.D. Tex. Mar. 30, 2023) (same).

7

requiring that level of detail, *i.e.,* risk profile, bond-to-equity ratio, investment strategy, is inconsistent with basic pleading standards). Critically, Defendant does not argue against the comparability of the Indexes. Nor could it. Thus, Defendant concedes that they are meaningful comparison. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by [the] opening brief."). Because the meaningfulness of the Indexes interrelates to Plaintiffs' imprudent process allegations, Plaintiffs have stated a meaningful benchmark.

Defendant fatally ignores paramount context for the meaningfulness of the S&P Index, meaning that it is the investment manager's *own* designated index for evaluating the JPM TDFs' performance. This "'context specific'" comparison (*Matney*, 80 F.4th at 1148) has been endorsed by numerous courts. In *Anderson* the Ninth Circuit held that performance compared to a manager's designated index is meaningful, but those plaintiffs failed to plead such data. *See Anderson v. Intel Corp. Inv. Pol'y Comm*., 137 F.4th 1015, 1025 (9th Cir. 2025) *cert. granted sub nom.*, 2026 WL 120679 (U.S. Jan. 16, 2026); *see also Johnson*, 122 F.4th 205, 217 (the Sixth Circuit holding the S&P target "indices provided a meaningful comparison because 'tracking the market index was the stated investment goal of the fund.'"); *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 596 (8th Cir. 2009) (similar); *see also Coppel v. SeaWorld Parks & Ent., Inc*., No. 21-cv-01430, 2023 WL 2942462, at *17 (S.D. Cal. Mar. 22, 2023) (using a funds' "own "primary prospectus benchmark'" is meaningful); *Schissler v. Janus Henderson US (Holdings) Inc*., No. 22-cv-02326, 2023 WL 6902050, at *5 n.6 (D. Colo. Sept. 7, 2023) (same); *Karpik v. Huntington Bancshares Inc*., No. 17-cv-1153, 2019 WL 7482134, at *5 n.9 (S.D. Ohio Sept. 26, 2019) (same). To be sure, "[i]t strains credulity" that "JPMorgan chose th[is] benchmark[] with no consideration of similarities they have

with the JPM TDFs." *Macias v. Sisters of Charity of Leavenworth Health Sys.,* No. 23-cv-01496, 2025 WL 4038011, at *8 (D. Colo. July 24, 2025). Thus, the S&P Index is meaningful.

In fact, both Indexes are frequently held to be meaningful. No "circuit court … has held that a market index can never serve as a meaningful benchmark." *Johnson*, 122 F.4th, at 218 (upholding the S&P Target date index); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving the expert's use of an index benchmark and Morningstar data); *Trauernicht v. Genworth Fin. Inc.*, No. 22-cv-532, 2023 WL 5961651, at **11-13 (E.D. Va. Sept. 13, 2023) (upholding the S&P Index); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 688 (E.D. Mich. 2021) ("parties in similar ERISA actions routinely reference these [Morningstar] indexes, or expert testimony that cites these indexes, to allege a breach of duty.")); *Fulton v. FCA US LLC,* No. 24-cv-13159, 2025 WL 2800003, at *3 (E.D. Mich. Sept. 30, 2025) ("the S&P Target Date Indices (S&P Indices) are the most common benchmark to approximate performance of the TDF industry, these are an appropriate, meaningful benchmark comparator); *Kistler v. Stanley Black & Decker, Inc.*, No. 22-cv-966, 2024 WL 3292543, at 10 (D. Conn. July 3, 2024) (similar).

"Because […] the S&P target date fund benchmark is a meaningful comparator, [the court need not determine whether the alternative target date funds are also meaningful." *Johnson*, 122 F.4th at 219 n.5; *see also Karpik*, 2019 WL 7482134, at *5 n.9 (using "one benchmark" that was "the benchmark listed in that fund's prospectus" was sufficient); *Fulton*, 2025 WL 2800003, at **7–8 (although the court was "less certain, however, that the five Comparator Funds are useful measures of the FCA TDFs' performance[,]"the fund's designated "benchmarks" alone were sufficient at this stage). Nonetheless, the Comparator Funds are meaningful.

The SAC details the comparability of risk profiles, active investment styles, investment managers, and more. *See* SAC, ¶¶ 93, 96-97, Appendix A. Plaintiffs have provided reasons for

9

their Comparator Funds, which renders Defendant's issues with Plaintiffs' choice of comparators premature factual disputes warranting expert discovery, not dismissal. *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1078 (N.D. Cal. 2017) (it is the providence of "expert testimony regarding whether the alternative investment option was an appropriate comparator."); *Daggett v. Waters Corp.*, 731 F. Supp. 3d 121, 136 (D. Mass. 2024) (same); *Moler v. Univ. of Maryland Med. Sys.*, No. 21-cv-1824, 2022 WL 2756290, at *6 (D. Md. July 13, 2022) (same); *Brookins v. Ne. Univ.*, No. 22-cv-11053, 2024 WL 1659507, at *4 (D. Mass. Apr. 17, 2024) (refusing to "consider the merits" of comparisons "substantively in a manner that would conflict with the Court's obligation to draw all reasonable inferences in favor of the plaintiff.").

Defendant raises many of the same arguments as it did with the previous complaint, wherein the only flaw cited by this Court was that the "comparator funds are managed differently from the funds at issue." *Del Bosque*, 2025 WL 3171326, at *1. Now, the Parties agree that the JPM TDFs and at least five "Comparator Funds are also all actively managed." Def's Br. at 9. Defendant's cases are almost all distinguishable because they did not involve funds with the same management style, whereas here, by comparing actively managed funds with actively managed funds, Plaintiffs are comparing funds with the same "strategies" "aims," "risks" and "potential rewards." *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021) (citation omitted).[4]

---

[4] The active verse passive comparison is the same distinguishable flaw in Defendant's other cases. *See Smith v. CommonSpirit,* 37 F.4th 1160, 1164 (6th Cir. 2022) (implausibly alleging that the defendants selected actively managed funds "when index funds [were] available on the market."); *Matney*, 80 F.4th at 1148 (similar); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (comparing categorically different investments with different management styles).

Moreover, the SAC does not just discuss asset allocations "generally" (Def's Br.[5] at 15), because "Plaintiffs cite Appendix A to the SAC to show that they have provided specific details as to the similar allocation of assets by the Comparator Funds, the Morningstar Comparator Index, and the JPM TDFs." *Macias*, 2025 WL 4038011, at *8; *see also* SAC, ¶ 94, Appendix A. Plus, Plaintiffs' Morningstar allegations account for the similar "underlying securities" "investment objective[s]" and risk profiles. SAC, ¶¶ 89-90. Courts recognize that providing an "explanation of the peer group's composition, alleging that they are chosen by Morningstar because the funds 'share core similarities'" is sufficient support. *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023) (distinguishing *Matousek*); *Seibert v. Nokia of Am. Corp.*, No. 21-cv-20478, 2024 WL 2316551, at *3 (D.N.J. May 22, 2024) (same); *Russell v. Illinois Tool Works, Inc.*, No. 22-cv-2492, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024); *Daggett*, 731 F. Supp. 3d at 141.

Defendant illogically argues that the asset allocations must be identical to be plausible, but Defendant does not cite any case that says the asset allocations must be any closer than the similar degree demonstrated in Paragraph 94 and Appendix A. *But see Mattson v. Milliman, Inc.*, No. 22-cv-37, 2022 WL 21596720, at *2 (W.D. Wash. Dec. 13, 2022) (rejecting the defendants' argument "that the funds and indices described in detail in the amended complaint have 'materially different' equity allocations.'"). As the SAC explains, any greater level of similarity would result in the same poor performance. *See* SAC, ¶ 96. As a matter of law, once plaintiffs have provided reasons for the similarities between funds, a "Defendants['s] dispute [of] the accuracy of this characterization" is "not appropriate at this stage." *Macias*, 2025 WL 4038011, at *8. The Fifth and Sixth Circuits have explicitly rejected "an inappropriately exacting standard" for pleading comparisons, because

---

[5] "Def's Br." refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Second Amended Complaint and Stay Discovery Pending Determination of The Motion to Dismiss, Dkt. 37.

Plaintiffs "need only plausibly *allege* facts supporting such an inference and need not *establish* anything at this stage." *Johnson*, 122 F.4th at 222 (emphasis in original); *Perkins*, 2024 WL 1574342, at *2 (applying *Iqbal*, *Twombly and Hughes* before rejecting the defendants' arguments that the comparisons were not detailed enough); *Trauernicht*, 2023 WL 5961651, at *13 (any "greater level of detail is unnecessary at the motion to dismiss stage where *Iqbal* and *Twombly*" apply); *Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*, No. 20-cv-9194, 2022 WL 17224708, at *5 (C.D. Cal. Sept. 27, 2022) ("the Court rejects Defendant's arguments that the comparator plans and their investment choices are so dissimilar from the Plan [] as a matter of law.").

None of Defendant's cases involved the asset allocations alleged here. The court in *St. Vincent* did not state that the allocation of bonds must be identical in TDF performance cases, but, rather, involved a materially different theory of imprudence surrounding the "real-estate bubble" and focused on the underlying funds of a materially different type of "non-agency mortgage" investments. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("*St. Vincent*"). Similarly, *Davis* did not involve TDFs, but rather "a variable annuity, which is technically an insurance contract" that was compared to an index fund, a categorically different type of investment. *Davis*, 960 F.3d at 485.

Defendant distinguishes *Hall* for Plaintiffs by noting that the complaint in *Hall* was "silent" on the very details that Plaintiffs here allege in detail. *C.f.*, Def's Br. at 16 (quoting *Hall v. Cap. One Fin. Corp.*, No., 22-cv-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023); SAC ¶¶ 93–95, Appendix A. Defendant also misrepresents the investment fee case of *Meiners* wherein the Eighth Circuit did not hold that the "allocations to bonds" was too distinct to be comparable because that was not alleged (Def's Br. at 15), nor did the court define how similar the allocations

12

must be. The court did, however, hold that "Meiners may be correct that certain factual findings made by the district court regarding Vanguard were improper at this stage." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 n.4 (8th Cir. 2018). The court also found that a "market index" can be used to state a meaningful benchmark, but that complaint only involved "one" comparator fund and no inference that the challenged fund underperformed compared to "*the market generally.*" *Id.*, at 822-24 (8th Cir. 2018) (emphasis in original). Here there are two Indexes representing the market. The court in *Karpik* distinguished *Meiners* because "unlike in *Meiners*, Plaintiffs did not cherry-pick a fund" but instead used "the benchmark listed in that fund's prospectus[,]" exactly like here. *Karpik*, 2019 WL 7482134, at *5 n.9; *see also Doll v. Evergy, Inc.*, No. 25-cv-00043, 2025 WL 4042583, at *4 (W.D. Mo. Sept. 10, 2025) (distinguishing *Meiners*). Lastly, *Matousek* did not involve the manager's benchmark or asset allocation discussion, but rather the complaint compared a "*value* strategy" to a "*growth* strategy" which are expected to have different "investment styles." *Matousek*, 51 F.4th at 282. On the other hand, Plaintiffs compare the JPM TDFs to other actively managed funds.

Defendant's glidepath arguments are likewise unavailing. Defendant argues that the glidepaths need to be the same to show similar strategies and risk. Yet, the SAC does allege sufficiently similar strategies and risk profiles. *See* SAC, ¶¶ 93, 96-97. Defendant's sources do not support dismissal. First, none of Defendant's cases are from this Circuit, and the Fifth Circuit has not required a "meaningful benchmark" nor any bright line criteria. *See* n.2. *supra*. Courts routinely refuse to engage in glidepath analysis, especially when there are sufficient other allegations when viewing the complaint as a whole, as ERISA requires. *See Thomson v. Caesars Holdings Inc.*, 661 F. Supp. 3d 1043, 1058 (D. Nev. 2023) (refusing to accept the defendants' arguments that different glide paths made the funds inapt comparators); *Doll*, 2025 WL 4042583,

at *3. The reasons alleged for the use of the Comparator Funds and the Indexes, mean that the Plaintiffs do not need to "provide a detailed explanation on the differences between the [JPM] TDFs and the Comparator TDFs." *Trauernicht*, 2023 WL 5961651 at *13 (distinguishing *Hall*). Indeed, JPMorgan did not find the existence of "through" fund glidepaths in the S&P Index too distinct to make a comparison.

Additionally, Defendant's 12-year-old Department of Labor "Tips for ERISA Plan Fiduciaries" reference undermines their glidepath arguments. As a foundational matter, the SAC does not mention the website and thus it is not subject to judicial notice or the incorporation by reference doctrine. In the Fifth Circuit, "courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, 646 F. Supp. 3d 807, 814 (W.D. Tex. 2022). This is especially true when it involves the Department of Labor. *See Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363 (M.D.N.C. 2022) ("Even assuming the Department of Labor's website is a public record of which a court can take judicial notice, Defendants [improperly] ask this court to use the information on that website to contradict the allegations in Plaintiffs' Amended Complaint."); *Cunningham*, 604 U.S. at 705–06 (the DOL's exemptions cannot be considered at the pleadings stage). In any event, the website merely says that glidepaths can differ, and fiduciaries should consider these differences – not that fiduciaries should only consider one type of glidepath.[6] The DOL was not instructing on ERISA's pleading standard (nor would that be their authority). More relevant is that *the same website also states that prudent fiduciaries "should consider prospectus information, such as information about performance[,]" which is where the*

---

[6] *See* https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds-erisa-plan-fiduciaries-tips.pdf last accessed Feb. 24, 2026.

*manager's benchmarks are listed*. *Id*. (emphasis added). That is the case here. Defendant failed to evaluate JPMorgan's designated benchmark and was not supposed to limit its investigation to one type of glidepath. Whether Defendant was "justified and informed" in selecting a "to" glidepath TDF, or in enabling the JPM TDFs to stay in the Plan based on asset allocation or glidepaths is a premature factual dispute. *In re Unisys Sav. Plan Litig*., 74 F.3d 420, 437 (3d Cir. 1996).

Third, Defendant does not provide any authority to support its position regarding glidepaths and pleading standards. In *Meiners*, the court did not discuss glidepaths and did not include the Indexes alleged here. *See supra,* discussing *Meiners*. Defendant's case of *Beldock* is entirely unhelpful because that court actually held that "[a]s it did in its prior order, the court concludes that it need not consider whether Plaintiffs' proposed comparators are meaningful benchmarks." *Beldock v. Microsoft Corp.*, No. 22-cv-1082, 2023 WL 3058016, at \*3 n.7 (W.D. Wash. Apr. 24, 2023). Importantly, none of Defendant's cases involved underperformance against the manager's designated index, which is sufficient alone, and certainly substantial enough that differing glidepaths do not render the SAC, as a whole, insufficient. *See Johnson*, 122 F.4th at 219 n.5.

Lastly, Defendant buries in a footnote that the share classes between the funds are different, but that does not make them any less comparable. Pertinently, the returns are net-of-fees. As many courts recognize, the *only* difference between share classes is price. *See Tibble,* 575 U.S. at 526 (2015); *Perkins*, 2024 WL 1574342, at \*3 (same); *Johnson*, 122 F.4th at 220. Defendant does not even elaborate on how different share classes have "additional differences." Def's Br. at 16 n.8. Plaintiffs' comparators are meaningful in the context of this case, the JPM TDF's own manager's standard, and under the pleading standard set forth by the Fifth Circuit and Supreme Court.

### C.      Defendant's Imprudent Processes

Defendant focuses solely on the SAC's performance comparisons while ignoring Plaintiffs' imprudent *process* allegations, particularly, the allegations regarding Defendant's ongoing deficient monitoring and reaction processes. An ERISA fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Perkins*, 2024 WL 1574342, at *2 (quoting *Tibble*, 575 U.S. at 528–29). "This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Tibble*, 575 U.S. at 529. Thus, Defendant defies binding precedent by stating "if there was a prudent process in the selection of that fund, there would be no liability under ERISA." Def's Br. at 19.

The SAC alleges that Defendant failed to adhere to the prevailing standard of investigation into regular and public dissemination of information about the JPM TDFs, the marketplace, and readily available, prudent alternatives. *See* SAC, ¶¶ 88, 109-123. This information was knowable *before* and during the Class Period. "A reasonable factfinder could conclude that an appropriate investigation would have revealed this information and […] would cause a fiduciary to eliminate" the JPM TDFs. *Bussian*, 223 F.3d at 307.

First, "Defendant[] do[es] not address Plaintiffs' process-based argument that it was imprudent for Defendants not to compare the JPM TDFs to the S&P Comparator Index despite JPMorgan itself making such comparison in publicly available information." *Macias*, 2025 WL 4038011, at *7. This warrants denying the motion to dismiss because these allegations infer a "flawed processes[,]" not just underperformance. *See id.*; *Fulton*, 2025 WL 2800003, at *6 (similar); *Schissler*, 2023 WL 6902050, at *5 n.6 (similar).

Second, historical performance data knowable before the start of the Class Period infers how early Defendant should have known of the JPM TDF's imprudence. *See* SAC, ¶ 108; *Johnson*, 122 F.4th at 218 ("the 2014 underperformance data (which demonstrates underperformance

16

through December 2014) would have alerted a prudent fiduciary to withdraw from the Focus Funds by early 2015."); *Fulton*, 2025 WL 2800003, at \*3 ("[a]t the start of the Class Period, the [challenged] TDFs had sufficient performance history to evaluate the suite's five-year returns" and the performance "did not improve over time."). "It is reasonable to conclude that if a predictable investment continues to chronically underperform, one could draw a conclusion that the fiduciaries overseeing that fund have breached their duty." *Disselkamp v. Norton Healthcare*, Inc., No. 18-cv-00048, 2019 WL 3536038, at \*8 (W.D. Ky. Aug. 2, 2019). That is the case here.

Third, Defendant failed to "consider [the] [P]lan's 'power ... to obtain favorable investment products'" as ERISA requires. *Tibble*, 575 U.S. at 328–29. The Plan's size gave it tremendous bargaining power for better investments, and "[a] plan that large does not necessarily establish a prudent process as a matter of law simply by hitting the average." *Walter v. Kerry Inc*, No. 21-cv-0539, 2022 WL 1720095, at \*3 (E.D. Wis. May 27, 2022); *see also Perkins*, 2024 WL 1574342, at \*4 (accepting as true that the plan's large size made it "eligible" for better products and services); *Mazza v. Pactiv Evergreen Servs. Inc.*, No. 22-cv-5052, 2023 WL 3558156, at \*2 (N.D. Ill. May 18, 2023) (being in the top 1% of plans "gave the Plan substantial bargaining power" to obtain better investments than others).

Fourth, the JPM TDFs' knowable problems are also bolstered by the alleged knowable Morningstar rankings. *See* SAC, ¶ 114. Publicly disseminated information by industry leaders critical of a fund is frequently deemed a supporting *indicia* of imprudence. *See, e.g., Unisys*, 74 F.3d at 436 (the challenged investments' imprudence was supported by the investment having "a rating which was notably lower than those assigned by" industry leaders); *Kistler*, 2024 WL 3292543, at \*14 ("[p]rudent fiduciaries would have at the very least taken note of the repeatedly poor rankings."); *In re MedStar ERISA Litig.*, No. 20-cv-1984, 2021 WL 391701, at \*2 (D. Md.

17

Feb. 4, 2021) (similar); *Krueger v. Ameriprise Fin., Inc*., No. 11-cv-02781, 2012 WL 5873825, at

*3 (D. Minn. Nov. 20, 2012) (finding allegations involving "Morningstar, an independent rating

service" plausible); *In re Biogen, Inc. ERISA Litig*., No. 20-cv-11325, 2021 WL 3116331, at *6

(D. Mass. July 22, 2021) ("reports from Morningstar" indicated that "Defendants plausibly knew

about the 'pitfalls' of the Active suite.").

Defendant does not argue that Morningstar had no basis for finding the JPM TDFs were so

poor, nor that this information was unknowable in real time. Instead, Defendant attempts to make

much of the fact that not every year is included, but this premature argument goes outside the four

corners of the SAC and does not affect the SAC's overall plausibility. Also, rather consider the

performance charts and rankings "as a whole" (*Hughes*, 595 U.S. at 177), Defendant "take[s] each

allegation separately to attack them individually" but, "the motion to dismiss fails when considered

in that way." *Garcia v. Alticor, Inc*., No. 20-cv-1078, 2021 WL 5537520, at *7 (W.D. Mich. Aug.

9, 2021); "The 'bigger picture' is the allegation that the Committee was not reviewing the Plan's

options regularly." *Id.*

In sum, Plaintiffs use "a 'foresight-over-hindsight perspective'" because the alleged

information "was known [publicly] at the time that [the Committee] was making its allegedly

imprudent retention decisions." *Johnson*, 122 F.4th at 220. The Sixth Circuit's decision in *Johnson*

is just one of many cases where the court saw through the defendants' unavailing hindsight

arguments, like Defendant attempts here. *See*, *e.g.*, *Garcia*, 2021 WL 5537520, at *7 ("Defendants

had access to performance data at various points throughout the relevant period, and Plaintiffs'

allegation is that Defendants did not adequately consider that information."); *Daggett*, 731 F. Supp.

3d at 138 (the complaint "plausibly alleged that the Plan Committee retained imprudent

investments for an unreasonable period of time and an 'adequate investigation would have

revealed" the investment's "'improviden[ce].'"); *Sellers v. Trustees of Coll.*, 647 F. Supp. 3d 14, 22 (D. Mass. 2022) (defendants "ignored public red flags."); *Kistler*, 2024 WL 3292543, at *11-12 (same). Having inadequate or "no process for monitoring" the JPM TDFs was "not within a 'range of reasonable judgments'" a fiduciary makes. *Carter*, 2025 WL 2427614, at *6 (quoting *Hughes*, 595 U.S. at 177).

While numerous cases have upheld similar process allegations, Defendant fails to provide any germane cases. Defendant fatally relies on the out-of-Circuit, unpublished district court decision of *Beldock v. Microsoft Corp.,* No., 22-cv-1082, 2023 WL 1798171 (W.D. Wash. Apr. 24, 2023), which is squarely at odds with more recent Supreme Court precedent and Fifth Circuit precedent in *Perkins* (and other Circuits). In *Perkins*, the Fifth Circuit rejected the argument that "the 'Plaintiffs offer no facts whatsoever rebutting the obvious alternative [prudent] explanation' for United's decision" because the defendants' explanation was "not the *only* plausible explanation[,]" and dismissal is unwarranted where plaintiffs allege an outcome "due to mismanagement." *Perkins*, 2024 WL 1574342, at *3; *see also Cunningham*, 604 U.S. at 701 (the potentially lawful reasons for challenged fiduciary conduct "do[es] not impose additional pleading requirements."); *Jones*, 2025 WL 2698700, at *3 (ERISA's "context specific" framework "does not mean, however, as Defendants imply, that plaintiffs must be held to a heightened pleading standard."). Plaintiffs need not rule out whether "Defendants had reasons to retain the [Challenged] TDFs that were consistent with their fiduciary duties." Def's Br. at 18 (quoting *Beldock*, 2023 WL 1798171, at *7). Regardless, the chronic, unyielding, knowable underperformance and poor reviews certainly rules out any prudent explanation for retaining the JPM TDFs in light of readily available alternative TDFs. *See Perkins*, 2024 WL 1574342, at *4 (the size of the plan made it "eligible for some of the" best options "on the market.").

19

Defendant cites to *Anderson* to note that an ERISA plaintiff has access to information which can be used to show whether "a prudent fiduciary in like circumstances would have acted differently." Def's Br. at 21 (quoting *Anderson*, 137 F.4th at 1025–26). Plaintiffs have done so by using the benchmark endorsed in *Anderson*: the manager's designated benchmark. *See Anderson*, 137 F.4th at 1025. Indeed, the S&P Index and Morningstar rankings demonstrate that the complaint is not just using "Plaintiffs' preferred alternatives" but the data and standards of industry experts and JPMorgan. Def's Br. at 21 (quoting *Hall*, 2023 WL 2333304, at *6). In *Trauernicht*, the court distinguished *Hall* and *Tullgreen* because, like here, "the SAC provides ample detail on the underperformance of the [challenged] TDFs and how the underperformance would have signaled the need for a change to a prudent fiduciary," such as by using the manager's designated benchmark. *Trauernicht*, 2023 WL 5961651, at *12; SAC, ¶ 116.

Defendant's reliance on *White* is also misplaced because Plaintiffs do not take issue with the "risks and features" of the JPM TDFs, unlike in *White* where the fees of mutual funds were compared to separate accounts. *White v. Chevron*, 2017 WL 2352137, at *10 (N.D. Cal. May 31, 2017), *aff'd*., 752 Fed. Appx. 453 (9th Cir. 2018). *Smith* is also distinguishable because there was only one comparator and one "five-year snapshot" (Def's Br. at 18; *see also* n.3 *supra*), whereas Plaintiffs here use numerous charts, cycles, rankings, comparators, and allege that "an extremely large Plan, like this one, could have used its asset size and negotiating power to invest in" better funds. *McNeilly v. Spectrum Health Sys*., No. 20-cv-870, 2022 WL 22996675, at *4 (W.D. Mich. Dec. 20, 2022) (distinguishing *Smith*). Hence, "Plaintiff brings allegations that the Committee failed *fo[r] years* to perform sufficient reviews or investigations into the Plan's performance" and "[Defendant] failed to sufficiently consider other alternatives" which is plausible an "consistent with *Smith*." *Id*.

*St. Vincent* actually supports that Plaintiffs have sufficiently alleged inferences of imprudence based on ERISA's pleading standard, because the Second Circuit recognized that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *St. Vincent*, 712 F.3d at 718; *see also Braden*, 588 F.3d at 598 (same, overturning dismissal). However, in that case, opposite of here, the plaintiff had "access to this information" because it was the "the plan administrator." *Id*. at 720. More recently, the Supreme Court instructed on a "heighten[ed] [] fairness concern" for plaintiffs at the pleadings stage, because many fact disputes and abilities to rule out defendants' alternative explanations would "turn on facts one would expect to be in the fiduciary's possession." *Cunningham*, 604 U.S. at 705.

### D.    Underperformance was Consistent and Subpar

Like all ERISA allegations, underperformance allegations are context specific and must be read "as a whole." *Hughes*, 595 U.S. at 177. The Plan's ability to achieve better investments, than, for example, smaller plans, contextualizes how subpar the JPM TDFs were. *See Tibble*, 575 U.S. at 328–29; *Walter*, 2022 WL 1720095, at \*3; *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 680 (7th Cir. 2016) ("we are obliged to take as true the plaintiffs' alleged" fact that the "rate" was "unreasonabl[e.]'"). Worse yet, by chronically failing to meet the Indexes, the JPM TDFs were not even "average or middle-of the-road[;]" they were, as explicitly alleged, subpar. Def's Br. at 17; *see* SAC, ¶¶ 109-19. The Morningstar Rankings further prove the JPM TDFs were deemed unacceptable. *See* SAC, ¶ 114.

Plaintiffs sufficiently allege numerous 3- and 5-year return cycles spanning from January 1, 2016, through December 31, 2020 to show persistent underperformance against numerous comparators. *See* SAC, ¶¶ 103-19; *see also Kistler*, 2024 WL 3292543, at \*11 (finding 3- and 5-

21

year return cycles sufficient); *In re Quest Diagnostics Inc. ERISA Litig.*, 2021 WL 1783274, at *3 ("five of six calendar years" was sufficient); *Binder v. PPL Corp.*, No. 22-cv-00133, 2024 WL 1096819, at *3 (E.D. Pa. Mar. 12, 2024) ("January of 2015 through the end of 2017" was sufficient); *Thomson*, 661 F. Supp. 3d at 1058–59; *Johnson*, 122 F.4th at 216-18; *Sellers*, 647 F. Supp. 3d at 30. The degree of underperformance is also similar or greater than the degrees held to be sufficient in other cases. *See Miller v. AutoZone, Inc.*, No. 19-cv-02779, 2020 WL 6479564, at *5 (W.D. Tenn. Sept. 18, 2020) (2.20% was sufficient); *Carter*, 2025 WL 2427614, at *6 ("the Court reasonably infers that 1.36% is sufficient underperformance for the Committee to intervene."); *Payne v. Hormel Foods Corp.*, No. 24-cv-545, 2024 WL 4228613, at **6-7 (D. Minn. Sept. 18, 2024) (underperformance as small as 0.71% was sufficient); *In re Omnicom ERISA Litig.*, No. 20-cv-4141, 2021 WL 3292487, at *4 (S.D.N.Y. Aug. 2, 2021) (underperformance "by as much as 2.92% on a trailing five-year basis" was sufficient); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-cv-9910, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) ("even a 1% difference in net returns each year can reduce a participant's savings by over a fourth by retirement."); *Troudt v. Oracle Corp.*, No. 116-cv-00175, 2017 WL 663060, at *6 n.2 (D. Colo. Feb. 16, 2017), (same)

The consistency of absolute and relative underperformance against all comparisons is beyond dispute. *See* SAC, ¶¶ 103-19; Def's Br. at 2.[7] Defendant merely self-servingly argues the JPM TDFs did not underperform enough, but that is an alternative explanation for a later stage. *See Perkins*, 2024 WL 1574342, at *3; *Russell*, 2024 WL 2892837, at *3 (disregarding the defendants' opinion "that the performance of the funds in this case was entirely satisfactory.").

---

[7] The degree of underperformance is less important because of the added process allegations. *See Fulton*, 2025 WL 2800003, at *8 ("whether the [] TDFs performed significantly worse, is best left for resolution at summary judgment […] [b]ecause there is already evidence that the [] TDFs performed worse than […] internal benchmarks."); *Macias*, 2025 WL 4038011, at *10 (similar).

22

Defendant does not provide any authority that a complaint is implausible unless it is alleged that "the Plan at issue offered the *worst* funds available," Def's Br. at 17 (emphasis in original), and Plaintiffs do not allege that Defendant was required "to pick the best performing fund." Def's Br. at 17 (quoting *Meiners*, 898 F.3d at 823). Defendant failed to monitor the JPM TDFs and remove them in a timely manner, as the Supreme Court and ERISA require. *See Tibble*, 575 U.S. at 530. *Baumeister* is distinguishable, because the issue was that there was no comparison "against the TDF marketplace as a whole" which is what the Indexes demonstrate here. *Baumeister v. Exelon Corp.*, No. 21-cv-6505, 2023 WL 6388064, at *4 (N.D. Ill. Sept. 29, 2023). Moreover, in *Baumeister*, the challenged funds were "in the middle of the pack" because "*three of the six comparators had returns lower* than" the challenged funds. *Id.*, at *5 (emphasis added); *c.f.* SAC, ¶¶ 104, 107, 119 (The JPM TDFs consistently "underperformed every Comparator Fund" and the Indexes).

The SAC provides ample information from over the years that a prudent fiduciary would have uncovered and would have prompted removal. "From these allegations," it is plausible to "reasonably infer that the [defendant] was asleep at the wheel." *Perkins*, 2024 WL 1574342, at *3.

### E.    The Court Already Rejected Defendant's Statute of Limitations Arguments

This Court has already ruled that "assuming all alleged facts in favor of plaintiffs, the Court cannot say that the claims are time-barred at this stage. As both sides seem to recognize, determining actual knowledge is challenging and requires a complicated factual analysis." *Del Bosque*, 2025 WL 3171326, at *5 n.34. There has been no change in facts or law that would render a different holding appropriate for the SAC. Plaintiffs' prior opposition to Defendant's "actual knowledge statute of limitations" argument (Def's Br. at 22), pointed out that "Defendant does not mention *Sulyma*, but it is the most binding precedent" wherein the Supreme Court held that

23

although the "petitioners had disclosed their investment decisions" over three years before the suit was filed, "§ 1113(2) begins only when a plaintiff actually is aware of the relevant facts, not when he should be" and "even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure." Dkt. 27 (quoting *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 181-82, 187–89 (2020); *see also Su v. Johnson*, 68 F.4th 345, 356 (7th Cir. 2023) (disclosures do not even "establish constructive ('should have known') knowledge" let alone "'actual knowledge.'"). Likewise, here, simply that Defendant disseminated "notice of the elimination of the JPMorgan TDFs" does not prove actual knowledge of the *breach*. Def's Br. at 22.

The court in *Kohari* provided three reasons for rejecting the actual knowledge arguments: (1) "disclosure, alone, is insufficient to establish 'actual knowledge[;]'" (2) "the Complaint alleges that, "Plaintiffs did not have knowledge of all material facts ... necessary to understand that Defendants breached their fiduciary duties[;]" and (3) "[n]either the Complaint nor Defendants contend that the annual disclosures sent to Plaintiffs provided information beyond the fee and performance data—specifically, information regarding the underlying process for reaching decisions." *Kohari v. MetLife Grp., Inc.*, No. 21-cv-6146, 2022 WL 3029328, at *6 (S.D.N.Y. Aug. 1, 2022).[8] The same is true here. *See* SAC, ¶¶ 57-61 ("Plaintiffs did not have and do not have actual knowledge of the specifics of Defendant's decision-making process […] because this information is solely within the possession of Defendant prior to discovery" including meeting minutes which are "the bare minimum needed to peek into a fiduciary's monitoring process."). Defendant seemingly agrees that "[a] plaintiff has 'actual knowledge' of the breach […], when they have

---

[8] Courts recognize that "mere notification that [certain] funds were in the Plan menu falls short of providing 'actual knowledge.'" *Davis v. Stadion Money Mgmt., LLC*, No. 19-cv-556, 2020 WL 1248580, at ** 3,4 (D. Neb. Mar. 16, 2020); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-cv-9910, 2022 WL 538146, at *9 (S.D.N.Y. Feb. 14, 2022) (same); *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 692-93 (D. Conn. 2018) (same).

24

knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty." Def's Br. a 22 (quoting *In re 2014 Radioshack ERISA Litig.*, 165 F. Supp. 3d 492, 497–98 (N.D. Tex. 2016) (O'Connor, J.)). To be sure, "actual knowledge" in the ERISA sense "means when [plaintiff] has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty and "material facts" will "include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).

Regarding ERISA's six-year period of repose, Plaintiffs again concede that May 20, 2019, should be the start of the Class Period. *See* Def's Br. at 22; Dkt. 27 at 28 n.8. Alleging historical "underperformance prior to May 20, 2019" is not the same as challenging "*conduct* occurring outside of the six-year statute of limitations." *Id*. (emphasis added). Performance information from before the Class Period is relevant because it demonstrates chronic and available information that Defendant should have considered during the Class Period. *See Johnson*, 122 F.4th at 218.

## IV.   CONCLUSION[9]

Plaintiffs respectfully request that Defendant's motion to dismiss be denied, or alternatively, Plaintiffs be granted leave to amend their complaint.

Dated: February 27, 2026                        Respectfully submitted,

                                                */s/ Mark K. Gyandoh*
                                                Mark K. Gyandoh, Esquire
                                                (Admitted *Pro Hac Vice*)
                                                James A. Maro, Esquire
                                                (Admitted *Pro Hac Vice*)
                                                **CAPOZZI ADLER, P.C.**
                                                312 Old Lancaster Road

---

[9] Defendant reraises its request that "[d]iscovery should be stayed pending the Court's decision on Defendant's dismissal motion." Def's Br. at 23. The Court has already granted this request.  *See* ECF No. 29.

Merion Station, PA 19066
Email:  markg@capozziadler.com
           jamesm@capozziadler.com
Telephone: (610) 890-0200

*Counsel for Plaintiffs and the Putative Class*

26

## CERTIFICATION OF SERVICE

I hereby certify that on February 27, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:     */s/Mark K. Gyandoh*
Mark K. Gyandoh, Esq.